CASE 8.—PROSECUTION AGAINST ANDERSON AUSTIN FOR HOMICIDE.—Dec. 11.

## Austin v. Commonwealth

Appeal from Allen Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Defendant convicted and appeals.   Affirmed.   .

1. Criminal Law—Instructions—Sufficiency—Where the court, on a trial for homicide, correctly charged on the law of self-defense, an instruction that to kill with a deadly weapon in sudden affray or sudden passion without malice "and not in * * * necessary self-defense" was voluntary manslaughter, was not erroneous for failing to state the law of self-defense.   .

2. Same—Argument of Counsel—A statement of the prosecuting attorney in his argument to the jury on a trial for homicide while warning them of their duty, that the crack of the pistol, the roar of the shotgun and the flash of the dirk had made the state notorious for crime, was not reversible.

3. Same—On a trial for homicide the prosecuting attorney, in his closing argument, stated that accused was under the duty to flee before striking.  On objection he withdrew the statement, and said that he meant to say that accused must avoid striking if he could in safety to himself as the situation then reasonably appeared to him.  Held that the statement was not prejudicial to accused.

4. Same—Evidence at Former Trial—Method of Proof—Statutes.

—Ky. stats. 1903, secs. 4637-4645, authorizing the appoint-
ment of an official stenographic reporter who shall take
stenographic notes of the testimony, and make a transcript
of the same to be used in making a bill of exceptions, and
providing that, in a criminal case, the testimony, taken by
the reporter, shall be used on a subsequent trial only on the
consent of accused, do not change the method of proving the
testimony of a deceased witness by bystanders who heard
and remembered the testimony of the deceased witness, and
do not make the reporter's notes the best evidence.

5. Same—The transcript of the testimony of a deceased witness,
testifying at a former trial, may be proved by the official
stenographic reporter and read by him as evidence when the
reporter testifies that the testimony was taken down accu-
rately and correctly transcribed.

6. Witnesses—Cross-Examination—Testing Memory and Veracity.
—In a criminal case the stenographer who took down the
testimony of the witnesses at a former trial and who testi-
fied as to the testimony given at that trial by a deceased
witness was properly cross-examined by being required to
read his transcript of the evidence as a means of testing his
memory and veracity.


W. C. GOAD Attorney for Appellant.

Our contention is:—

1.   The court erred in admitting incompetent evidence.

2.   The court failed to properly instruct the jury.

3.   Misconduct of Counsel for the Commonwealth in argument
to the jury in saying that "the crack of the pistol; the roar of the
shotgun, and the gleam of the dagger," is what has brought
Kentucky in disrepute abroad, and in saying further that the proof
shows the appellant was in a forty acre field at the time of the
difficulty and it was his duty to have escaped.


N. B. HAYS, Attorney General, C. H. MORRIS, J. H. GILLIAM
and SIMS & GRIDER for appellee.


We submit that unless statements in argument of counsel,
excepted to at the time, are clearly calculated to mislead the jury
and prejudice the substantial rights of the appellant the case
should not be reversed therefor.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

The judgment of conviction of appellant was reversed on a former appeal because the trial court failed to properly instruct the jury as to the law of self-defense. 91 S. W. 267, 28 Ky. Law Rep. 1087. On a retrial of the case the instruction indicated in the opinion as proper was given. The appellant was again convicted. On this appeal it is insisted that the effect of the self-defense instruction was nullified by a failure to properly state in the manslaughter instruction (under which defendant was found guilty) that one's right to act in his self-defense was not properly set out in that instruction, also, in that it did not allude to the right of the accused to act on appearances. The court, in that instruction, told the jury that to strike and kill with a deadly weapon, in sudden affray, or sudden heat and passion, without malice, "and not in his necessary self-defense," was voluntary manslaughter. It is insisted that the whole law of self-defense should have been stated there. But we think the instruction was sufficient in defining voluntary manslaughter. That is what the court was there defining. As to what would constitutte "in his necessary self-defense" was correctly set out in the instruction defining the defense. Instructions are intended to be read all together. Each one qualifies or limits all the others. They are intended to be, and are necessarily, so understood in their application. And when each instruction is correct within itself, and and all are consistent as a whole, and give all the law applicable to the case, the practice cannot be deemed prejudicial to the defendant because the same ideas might have been better expressed.

In the closing arguments to the jury, attorneys

representing the commonwealth are charged with
having abused their privilege, and indulged in un-
warranted statements to the jury.  One of them was
the statement that the crack of the pistol, the roar of
the shotgun, and the flash of the dirk have made the
State notorious for crime. The attorney was evidently
warning the jury of their duty as part of the ma-
chinery of the law for the punishment of crime, that
personal violence resulting in innumerable deplorable
tragedies, the history of which was well known, was
due to the lax administration of the law, and that all
such could best be deterred by a prompt and stern
enforcement of the law against homicide in each case
by the jury trying it.  We do not think the line
of argument was objectionable.  The county attor-
ney in his closing argument, in commenting upon the
defendant's right to strike if he could not reasonably
and safely avoid it, told the jury that the defendant
was under the duty to flee before striking.  But upon
objection, he withdrew the statement, and said that
he meant to say that the accused must avoid striking,
if he could in safety to himself as the situation then
reasonably appeared to him. Instead of the incident's
being hurtful to the defendant, it appears to us that
it sharply accentuated the real right of the defendant,
and excluded the necessity of flight—a view which
might have been mistakenly taken unless thus warned.
We cannot see how the occurrence could possibly have
prejudiced the rights of the accused.

A witness who testified for the commonwealth at
the first trial—and the only eye-witness to the killing
(except defendant) who saw the whole difficulty—has
died.  On the next trial the commonwealth was
allowed to prove by bystanders the testimony of the
deceased witness on the other trial.  It is admitted
that the testimony given by a witness since deceased,

given when the accused was confronted by him and had the opportunity of cross-examining him, may be proved on another trial of the same matter between the same parties. 2 Roberson's Criminal Law, 1077; Kean v. Commonwealth, 10 Bush 190, 19 Am. Rep. 63; Fuqua v. Commonwealth, 118 Ky. 578, 26 Ky. Law Rep. 420, 81 S. W. 923. In the instant case, the evidence was adduced by the introduction of the stenographer who took the notes at the former trial, and by another who heard the testimony given at the former trial. Each of the witnesses duly qualified themselves. The objection is that as the testimony of the deceased witness was taken down by the court's official stenographic reporter under the order of the court in the case, and had been transcribed as required by the statute, and was then on file in the record, that the stenographer's notes were the best evidence of what the witness had said, and was thereupon receivable first to prove the fact. And it is insisted that the stenographer's bill of evidence being in existence and a part of the record, precluded a resort to any other method of proving the testimony of the deceased witness. It is beyond question that the testimony of the deceased witness was relevant on this trial. The ordinary method indeed, the method of proving it under the practice in this State, was to introduce some person who heard it when given by the witness, and who remembered it, or remembered the substance of it. Kean v. Commonwealth, supra. Unless the statute relating to official court stenographers has changed the practice, the same rule must still prevail. Chapter 121, Ky. St., 1903 (being the act of July 13, 1893), and comprising sections 4637 to 4645, Ky. Stats., 1903, contains the law regulating the appointment of official stenographic reporters, their duties, compensation, and purposes for which their notes may be used.

The primary object of such notes is to make them, when extended and signed by the presiding judge and stenographer, a part of the bill of exceptions to be used on an appeal of the case. They take the place of the witnesses' statements otherwise set out in the bill of exceptions. But section 4643, Ky. St. 1903, makes the evidence so taken a part of the record of the case in which it is taken for certain other pur- poses. It allows it, in the discretion of the trial judge, to be used in any subsequent trial of the same case between the same parties, when the testimony of the witness cannot be procured; but it is expressly pro- vided "that in criminal cases such testimony shall be so used only upon the consent of the defendant." There is no provision of the statute that makes the stenogra- pher's "bill of evidence," as it is sometimes called, the best evidence of what the witnesses may have deposed, so that it will exclude all other evidence on the subject. Least of all is there room for the conten- tion that it is made so in the trial of criminal cases.

In the case of Fuqua, supra, it was said: "As the stenographer, if familiar with the testimony given by Davis at the previous trial, might, from mere recollec- tion, have detailed it to the jury, we know of no reason why he should not have been permitted to read it from the transcript made from the stenographer's notes taken by him at the time Davis testified. Manifestly it was and is more accurate than the memory of any human witness who may have heard Davis testify." This statement of the court is seized upon as declar- ing that the stenographer's bill is the best evidence of what the witnesses said on the former trial. But it does not. It deals alone with the weight or credibility of the evidence, and not at all with its grade. In law "best evidence" is a technical term. It does not necessarily mean that which is most credi-

ble, though generally it is supposed to refer to that fact. By the rule requiring the introduction of the best evidence is meant that no evidence shall be received which is merely substitutionary in its nature, so long as the original evidence can be had. Greenleaf says (1 Greenleaf, Ev. section 82): "The rule excludes only that evidence which itself indicates the existence of more original sources of information." As to what is the best evidence is therefore always a matter for the court alone to decide. But as to the weight to be given any evidence, it is for the jury to say. For example, the best evidence of the contents of a letter would be the letter itself, but if that is lost, then secondary evidence as to its contents is receivable; in such case a letterpress copy is classed as secondary evidence of the contents of the original. But the parties would not be confined to that; they could introduce the testimony of witnesses who had seen and read the original. It would be for the court to say whether the facts showed the loss of the original so as to admit the secondary evidence; but the jury would have to determine its weight. They probably would believe the letterpress copy before the memory of a witness who contradicted it. But whether so or not, both the letterpress copy and the testimony of the witnesses would be allowed to go to them. So a photograph of an object is relevant when proof of the existence and condition of the object is a thing to be proven. But the photograph is not deemed the best evidence, in the technical sense, so that the testimony of eye-witnesses would be excluded by it.

If the stenographer could remember the testimony of the witness where such testimony is receivable in evidence, in the same or in another trial, he would be competent as a witness to testify concerning it. If he had recourse to his shorthand, or to his extended

notes, to refresh or aid his memory, it would be allowable, of course. And if he could only say that he took the notes in shorthand, and took them correctly, and had them transcribed correctly, testifying that his transcript was correct, he might read the transcript as his recollection of the testimony. Just as a book-keeper is allowed to read his book entries, and just as a photographer would be permitted to testify as to the appearance of the object in dispute. The fact he had taken a photograph of it would not render incompetent his parol description of it, although he might refer to his photograph as being its true and accurate picture. We think the stenographer's bill may be proved and read by him as evidence of what a deceased witness may have testified on a former trial, when that fact may be proved, provided he testifies that it was taken down accurately by him at the trial, and is correctly transcribed. But other evidence, that of any other competent witness who heard and remembers the substance of the deceased witness' testimony, is also receivable in the case to substantiate or to rebut the fact that the said deceased witness did so testify. In this case the accused had the stenographer, on her cross-examination, to read her transcript of the evidence. This was also properly admitted for the reasons given above, as well as furnishing a test of the stenographer's memory and veracity.

We perceive no error in the record, and the judgment is affirmed,