## Hunn v. Commonwealth.

(Decided April 14, 1911.)

### Appeal from Mercer Circuit Court.

1. Homicide—Voluntary Manslaughter—Instructions—Evidence.—The circumstances attending appellant's shooting of deceased were such as to furnish some evidence that he was actuated by malice, or that his act resulted from sudden heat and passion, but in any event there was abundant evidence to authorize the verdict for voluntary manslaughter upon the ground that the death of deceased was caused by appellant's reckless and grossly careless handling and shooting of the pistol, with knowledge on his part that it was dangerous to so handle it.

2. Verdict—Failure to Name Offense for which Defendant is Found Guilty.—The failure of a verdict to name the offense for which the jury finds the defendant guilty does not make it invalid, if from the language as a whole no doubt can arise as to the offense of which it finds him guilty.

3. Commonwealth's Attorney—Statement in Argument—Mere Deduction.—The statement in argument to the jury complained of was a mere deduction which the jury must have known did not rest upon evidence, and it is not probable they were misled by it.

E. H. GAITHER for appellant.

JAMES BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Settle.

In March, 1910, the appellant, Julian Hunn, shot George Coffee at Burgin, Kentucky, and the latter died of the wound within five minutes of its. infliction. Appellant was indicted for murder by the grand jury at the May Term of the Mercer Circuit Court and on the trial, which occurred at the same term, he was by the petit jury found guilty of voluntary manslaughter, though the verdict did not in terms so declare, and his punishment fixed at confinement in the penitentiary twenty-one years. Judgment was entered in conformity to the verdict, and appellant having been refused a new trial has appealed.

According to the evidence the homicide occurred on the street at night. Appellant is a negro and deceased was also of that race. They had apparently been friends all their lives and several months prior to the killing had for some time occupied the same sleeping apartment and bed. A few minutes before deceased was shot he and appellant were scuffling and striking each other in front of a restaurant. The several witnesses who saw them thus engaged testified that.they were playing and apparently in good humor, but that they quit scuffling rather suddenly and separated; deceased going off down the street and appellant to one Harrison who stood a few yards distant in another direction. The witnesses failed to state why appellant and deceased suddenly quit scuffling or what was said by either of them when they separated, but observed no evidences of illwill or anger between them. When appellant reached Harrison, after separating from deceased, he handed Harrison a pistol he had been carrying on his person but immediately retook possession of it and with Harrison and one or two other negroes present started in the direction deceased had taken, intending, as they testified, to visit the home of a neighbor for the purpose of making up a party to go fishing a day or two later. They walked a short distance and encountered deceased standing by a paling fence against which he was leaning with his hands hanging over the fence and each hand containing a small rock, which one of the witnesses saw him pick up from the ground after he got to the fence and before appellant made his appearance.

According to the testimony of nearly all the witnesses, when appellant got to where deceased was standing by the fence he asked him for some tobacco. Deceased said he had no tobacco, but would buy some as soon as he got

up town and give him of it; in reply to which appellant said deceased had better buy the tobacco. Immediately following this statement by appellant he drew his pistol and pointing it at deceased, said: "George, I am going to shoot you," to which deceased did not reply. Appellant then began to snap the pistol at deceased. Though loaded with a cartridge in each chamber of its cylinder the pistol snapped four times, but at the fifth throwing of the hammer by appellant it fired and the ball entered deceased's heart causing his death in a few minutes. After shooting deceased appellant threw his pistol behind a barrel that stood on the sidewalk nearby. The weapon was later secured by one of the witnesses and delivered to the town marshal.

All the witnesses, including appellant, testified that deceased made no attempt to strike appellant or throw at him the rocks he held in his hands, and that he offered no resistance when appellant was snapping the pistol at him. After shooting deceased appellant assisted in carrying his body to his father's residence and went to summon a physician to his bedside. He was arrested that night and on the way to the jail denied to the town marshal and others that he shot deceased, and said the shooting had been done by some person standing about 100 yards from deceased.

On the day following his arrest he repeated his statement of the night before as to the manner in which the homicide was committed, but several days later admitted that he shot deceased, claiming, however, that it was an accident, and such was his contention on the trial in the circuit court.

While numerous grounds were filed in support of appellant's motion for a new trial, he relies upon only three grounds for a reversal of the judgment: 1st, That the jury were not properly instructed; 2nd, That the verdict did not specify the crime of which appellant was found guilty by the jury, and illegally fixed his punishment; 3d, That the Commonwealth's Attorney was guilty of misconduct in argument to the jury which the trial court erroneously permitted, notwithstanding appellant's objection thereto made at the time.

It is contended by appellant's counsel that instruction No. 1, which defined murder and put it in the power of the jury to find him guilty of that crime, was misleading and prejudicial, and that there was no evidence upon which to predicate it. Also that the second and third in-

structions relating to voluntary manslaughter should not have been given. These contentions are without force.

In Ewing v. Commonwealth, 129 Ky. 237, we had before us a case of homicide the facts of which were substantially the same as are presented by the record in this case. In the opinion of that case we said:

"On another trial, the court will by its instructions, submit to the jury these propositons: (1) If the defendant wilfully, feloniously and with malice aforethought shot and killed Carrie Shields, he was guilty of murder. (2) If he shot and killed her without malice aforethought, by the reckless or grossly careless handling or shooting of the pistol, when he knew the pistol was dangerous to life if used in the way he used it, they should find him guilty of voluntary manslaughter, although he did not intend to shoot her. (3) If he was not reckless or grossly careless in using the pistol, but intentionally pointed it at her, although believing it would not go off, nor intending to shoot her and not having reason to apprehend that it would go off, he was guilty of involuntary manslaughter. (4) If the shot that killed her was accidental and unintentional on the part of the defendant, and not wilful and with malice aforethought, as defined in No. 1, or the result of recklessness and carelessness as defined in No. 2, or of his intentionally pointing the pistol at her as defined in No. 3, he should be acquitted." Brown v. Commonwealth, 122 Ky. 626.

The foregoing several propositions were in substantially correct language, submitted to the jury by the court's instructions on appellant's trial; and in addition, the question as to whether the killing of deceased resulted from sudden heat and passion and without previous malice on the part of appellant; the jury being advised that if it did so result, or from the reckless or grossly careless handling or shooting of the pistol by appellant, when he knew it was dangerous to life, if used in the way he used it, they should in either of these events find him guilty of voluntary manslaughter.

The instruction as to murder and the instruction referring to the decision of the jury the question whether the homicide was committed by appellant in sudden heat and passion and without previous malice, were not without evidence to support them. While the evidence conduced to prove that appellant and deceased commenced to scuffle in play and probably so continued the scuffle for a time, the suddenness with which they quit scuffling and separated without words that could be heard by

others near them, the manner in which deceased went off, provided himself with rocks and stood in silence by the fence; and the manner in which appellant repossessed himself of his pistol, followed deceased, accosted him and persisted in snapping the pistol at him until he succeeded in discharging it and shooting him, together with his act of concealing the pistol and his denial for a time of responsibility for the shooting and claim that it had been done by another person whom he saw but could not identify, furnished some evidence from which the jury, without violence to appellant's rights, might have inferred that a serious disagreement or illfeeling between appellant and deceased had grown out of the scuffle in which they had been engaged, and that appellant in following and shooting deceased was actuated by malice, or that the act resulted from sudden heat and passion. In any event there was abundant evidence to authorize the verdict for voluntary manslaughter upon the ground that the death of deceased was caused by appellant's reckless and grossly careless handling and shooting of the pistol, with knowledge on his part, that it was dangerous to life to so handle it.

It is proper to say that the circuit court also instructed the jury to acquit appellant if they had from the evidence a reasonable doubt of his guilt; and if they found him guilty of any degree of the offense charged in the indictment, but had a reasonable doubt of the degree, it was their duty to convict him of the lower degree.

The jury were not instructed as to the law of self defense and the appellant does not complain that such an instruction was not given. He did not claim that the shooting of deceased was done in self defense; his sole defense being that it was accidental; in view of which and the circumstances attending the homicide, an instruction as to the law of self defense would not have been proper. We are satisfied that the instructions given on the trial contained the whole law applicable to the facts of the case.

We must also overrule appellant's objection to the form of the verdict. That it did not in words declare appellant guilty of voluntary manslaughter does not affect its validity. Its meaning is patent; the fact that the jury were authorized by the instructions and proof to find appellant guilty of voluntary manslaughter and that the punishment it prescribes is such as could be inflicted only for that crime, leaves no doubt of its being a verdict for voluntary manslaughter. The verdict might

properly have been corrected by the trial court before the discharge of the jury, but the correction was not necessary to its validity. The failure of the verdict to name the offense for which the jury finds the defendant guilty, does not make it invalid; if from its language as a whole no doubt can arise as to the offense of which it finds him guilty, it will be held sufficient. Hays v. Commonwealth, 12 R. 611; Lucas v. Commonwealth, 142 Ky. 416. (Advance Sheets, March 2, 1911.)

Appellant's further contention that the trial court erred in instructing and permitting the jury to fix the punishment of appellant, is likewise untenable. This contention rests on the ground that the jury if they found appellant guilty of an offense under the indictment above —involuntary manslaughter—could only declare the offense by their verdict, leaving it to the court to fix the penalty as provided by the indeterminiate sentence statute.

The crime of which appellant stands convicted was committed before the indeterminate sentence statute became operative; therefore, the fixing of the penalty to which appellant's guilt subjects him, was properly left to the jury; the court was without power to fix it. Dial v. Commonwealth, 142 Ky. 32. (Advance Sheets, February 16, 1911.) Stewart v. Commonwealth, 141 Ky. 522.

Appellant's final contention as to the alleged misconduct on the part of the Commonwealth's Attorney in argument, is, we think, without merit. The statement complained of was, in substance, ''that statistics showed that there were more crimes committed in Kentucky than any other State in the union, and that the juries were responsible for this state of affairs, because of their failure to inflict severe enough punishment.'' We are not prepared to agree to the statement of the Commonwealth's Attorney, though willing to concede that crime is too prevalent in the State; but we are unable to see that what he said could have seriously prejudiced appellant's rights. The statement attributed to the Commonwealth's Attorney was unsupported by a presentation of statistics; it was a mere argument or deduction which the jury must have known did not rest upon any evidence received by them, and it is not probable they were misled by it.

We are unwilling to hold that such a statement as is here complained of, though it were better left unsaid,

constitutes reversible error. Housman .v. Commonwealth, 128 Ky. 818.

In our opinion appellant had a fair trial. Wherefore the judgment is affirmed.