## McCoy v. Commonwealth.

(Decided September 25, 1912.)

## Appeal from Bourbon Circuit Court.

1. Instructions.—It is improper to instruct the jury upon a theory of the case which is not sustained by any evidence.

2. Prosecuting Attorney—Argument to Jury.—A broad latitude is, of necessity, allowed the prosecuting attorney in his argument. to the jury.

JOHN J. WILLIAMS for appellant.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

About midnight on September 24, 1911, appellant shot and killed Frazier White at a colored fair near Paris, Kentucky. Both were colored, and McCoy was conducting the dance hall at the fair. White's spinal cord was severed at the fifth dorsal vertebra, which resulted in paralysis. White was removed to a hospital in Lexington, where he underwent a surgical operation, and died on September 27th. McCoy was found guilty by the jury, and sentenced to imprisonment in the penitentiary during his life.

Briefly stated, the trouble arose about as follows: White, who was quite a young man, lost his cap during a short darkness which followed the imperfect working of the electric lights; and, uttering foul epithets, he demanded the return of his cap. His first conversation was with Darnall, who was the floor manager for Mc-Coy. Greeble cautioned Darnall and told him to leave White, because White had a knife and would cut him. Hearing the disturbance, McCoy remonstrated with White about his using foul language in the presence of women; whereupon White continued to use foul language, and called McCoy several vile names. The testimony is conflicting as to what occurred at the shooting, which took place almost immediately after Darnall had departed. A majority of the witnesses say that White was standing still, with his hands hanging at his sides; while McCoy says White drew a knife and attempted to cut him. Greeble testifies that White had a

knife before the killing occurred, but he did not see it at the time of the killing, or afterwards; and James testifies that White had something in his hand—he could not say what. James' testimony, however, is discredited by proof which shows that James was decidedly under the influence of liquor.

No objection is taken to the instructions given by the court; but is is insisted that McCoy was entitled to an instruction to the effect that if the jury were in doubt as to whether death came to White from the shooting, or from the operation which was performed upon White at the hospital, then McCoy was guilty only of malicious shooting, and not murder. This contention is based upon the theory that White may have died from the effects of the operation, and not from the effects of the wounding. There is no evidence, however, to sustain this contention. It is true, White underwent a surgical operation, with the hope of saving his life, but the testimony is uncontradicted that he could not have survived more than two or three days if the operation had not been performed, and that it was performed solely with the view of saving his life.

It is further contended that the verdict is contrary to the evidence, and that McCoy was, at most, guilty only of manslaughter. There is no merit in this contention. As above stated, according to the testimony of quite a majority of the witnesses, the shooting upon the part of McCoy was wholly unjustified and without excuse. McCoy is unsupported by any witness in his contention that White drew a knife. The verdict of the jury is amply sustained by the proof.

Finally, it is contended that the misconduct of the Commonwealth's Attorney was highly prejudicial to appellant's defense. The alleged misconduct consisted of the following statement made by Mr. Franklin, the Commonwealth's Attorney, in his final argument to the jury: "I don't know why such crimes as this should be tolerated in this community to clog the wheels of justice and to delay all sorts and kinds of litigation, burdening your record page after page with tales of murder, with acts of violence, to such an extent that His Honor is compelled to give to this end of the docket in this beautiful county of Bourbon so much time with this business. Parties litigant are in need because things are hung up here that cannot be disposed of immediate-

ly. Why, it is an outrage, a shame upon the peace and dignity of the Commonwealth of Kentucky.'' A broad latitude is of necessity allowed the prosecuting attorney in his argument to the jury. Gipson v. Commonwealth, 133 Ky., 398; Cox v. Commonwealth, 118 S. W. 282; Oldham v. Commonwealth, 136 Ky., 789; Lee v. Commonwealth, 142 Ky., 792; Hunn v. Commonwealth, 143 Ky., 143. The rule was not infringed in this instance.

After a careful reading of all the evidence, we are satisfied that appellant has had a fair trial, and that his punishment is lenient rather than severe.

Judgment affirmed.