ODENEAL *v.* STATE.*

*(Jackson.* April Term, 1913.)

1. **CRIMINAL LAW.** Appeal and error. Bill of exceptions..
   Evidence on motion for new trial.

Where the record in a criminal case showed that the defendant
   had pleaded not guilty, but testimony was introduced on the·
   motion for a new trial that he had never been properly ar-
   raigned, the question cannot be considered on writ of error,
   where the bill of exceptions fails to show that it contains all
   the evidence offered on the motion for a new trial. (*Post, p.*
   62.)

Cases cited and approved:  Eatherly v. State, 118 Tenn., 371;
   Ransom v. State, 116 Tenn., 355.

2. **CRIMINAL LAW.** Instructions. Reasonable doubt. "Moral
   certainty."

An instruction which correctly defines a reasonable doubt, and
   then states that, in order to convict, it is not required that the·
   guilt of the defendant be established to an absolute certainty,
   but to a "moral certainty," that is, one which convinces and·
   directs the understanding, and satisfies the reason and judg-
   ment of the truth of the charge, is not erroneous. (*Post, p.*
   63.)

3. **CRIMINAL LAW.** Instructions. Alibi.

While it is better to treat an alibi as a point of evidence, and not
   as a defense, an instruction that the defense of alibi, when
   clearly and fully established by the proof, is a perfect defense,
   but that the jury should consider the proof with strictness and
   caution, as it is easily concocted, is not erroneous, where it
   also states that if, weighing the proof of the alibi impartially
   in connection with all the circumstances in the case, the jury

---

*On the question of homicide as affected by negligence or lack
of skill in treatment or care of wound, see notes in 22 L. R. A.
(N. S.), 841, and 28 L. R. A. (N. S.), 665.

Odeneal v. State.

have a reasonable doubt as to the defendant's presence at the place of the crime, they should acquit him; any impropriety in the use of the words "when clearly and fully established by the proof," as requiring proof beyond a reasonable doubt, being sufficiently corrected by the rest of the instruction, so as not to mislead the jury. (*Post, pp.* 64, 65.)

Cases cited and approved:   Thompson v. State, 24 Tenn., 138, 139; Chappel v. State, 45 Tenn., 92; Jefferson v. State, 3 Shan., 329, 333; Wiley v. State, 64 Tenn., 662; Legere v. State, 111 Tenn., 368, 377; Lawless v. State, 72 Tenn., 173, 181, 182; Owen v. State, 89 Tenn., 698.

4. CRIMINAL LAW.   Appeal and error.   Bill of exceptions. Evidence on motion for new trial.

Where the bill of exceptions in a criminal case does not state that it contains all the evidence in support of a motion for new trial, error in not granting the motion on the ground of newly discovered evidence cannot be considered. (*Post, p.* 66.)

5. HOMICIDE.   Evidence.   Sufficiency.   Cause of death.

In a prosecution for homicide, evidence *held* sufficient to show that the death of the deceased was due to the injury inflicted by the defendant, and not to the surgeons who operated after he was wounded. (*Post, p.* 67.)

6. HOMICIDE.   Cause of Death.   Surgical operation.

One who unlawfully inflicts a dangerous wound upon another is liable for his death, whether it be direct, or occasioned by a surgical operation made necessary by the wound and performed with reasonable skill. (*Post, p.* 68.)

Cases cited and approved:   Noble v. State, 22 L. R. A. (N. S.), 841-848; Tibbs v. Com., 138 Ky., 558; McCoy v. Com., 149 Ky., 447; Perdue v. State, 135 Ga., 277; Johnson v. State (Fla.), 59 South., 894.

FROM HAYWOOD.

Error to Circuit Court, Haywood County.—THOS. E. HARWOOD, Judge.

KINNEY & WILLS, for plaintiff in error.

ASSISTANT ATTORNEY-GENERAL FAW, for the State.

Mr. Chief Justice NEIL delivered the opinion of the Court.

The plaintiff in error was indicted in the circuit court of Haywood county for the murder of one Haywood Pender, was convicted of voluntary manslaughter, and sentenced to a term of seven years' confinement in the State penitentiary. On his motion for a new trial he introduced witnesses to show that he had never been properly arraigned, although the entry on the minutes showed that he had pleaded not guilty and had gone to the jury on that issue. Without going into the question as to how far the entry on the minutes may be contradicted in this manner, it suffices to say that the bill of exceptions fails to show that it contains all of the evidence offered on the motion for new trial. *Eatherly* v. *State,* 118 Tenn., 371, 101 S. W., 187; *Ransom* v. *State,* 116 Tenn., 355, 96 S. W., 953.

It is next assigned as error that the trial judge committed error in his charge upon the subject of reasonable doubt. His honor instructed the jury that the plaintiff in error was presumed to be innocent of each and all the offenses embraced in the indictment, and that this presumption remained a witness in his favor until his guilt should be established to the satisfaction

of the jury beyond a reasonable doubt.  He then said to the jury that the State did not insist upon a conviction of murder in the first degree, and proceeded to define each subsequent degree, that is, murder in the second degree, and the two grades of manslaughter, and, as to each, instructed the jury that before they could convict the defendant of any one of these grades they must be satisfied of his guilt beyond a reasonable doubt.  His honor further instructed the jury upon the subject of reasonable doubt as follows:

"A reasonable doubt is not a mere captious or imaginary doubt, but is a doubt that arises naturally in your minds after a fair and impartial consideration of all the evidence in the case, and leaves your minds in that condition that you do not feel an abiding conviction to a moral certainty of the truth of the charge. *The law, in order to convict, does not require the guilt of the defendant to be established to an absolute certainty; but it does require his guilt to be established by the proof to your satisfaction to a moral certainty, and that is a certainty that convinces and directs your understanding and satisfies your reason and judgment of the truth of the charge.  If, therefore, the proof in this case convinces and directs your understanding and satisfies your reason and judgment of the defendant's guilt, you will convict him; if it does not, you will acquit him.*"

That portion of the above instruction which is objected to we have indicated by italics.  Taking the part objected to in connection with the preceding sentence.

we are of the opinion that there was no error in the instruction given.

The next assignment of error is based upon an excerpt from the judge's charge upon the subject of an alibi which was sought to be proven by the plaintiff in error. We shall quote the whole of the charge upon this subject, indicating by italics that part objected to, viz.:

"Under his plea of not guilty the defendant also insists upon the defense of an alibi; that is, that he, the defendant, was not out at the place where the shot was fired and the deceased shot, at the time he was shot; but that he, defendant, was in the house, and did not know of the shooting until he heard the pistol fire, and then only by its report. *The defense of an alibi is a perfect defense, when clearly and fully established by the proof; but, like every other fact in the case, it is left to you to say whether it has or has not been established. You should look [to] and examine the proof as to the alibi with strictness and caution, to avoid being misled by it, as it is easily concocted, where there is a design to perpetrate a fraud on the State, or even where there is no such design, it is such an easy matter for witnesses to honestly mistake the day or the time to which they refer.* But you will consider the proof of an alibi in connection with the other proof in the case, by the aid of your own experience and observation, and weigh it fairly and impartially, with an honest effort to reach the truth, and, if so weighing and considering all the facts and circumstances in the case, you have and

Odeneal v. State.

entertain a reasonable doubt as to whether the defendant was out in front of the hall or house when the shooting took place, or was at that time in the house away from the place of the shooting, then you should acquit the defendant; but if you have no reasonable doubt but that he was out there when the shooting took place and is guilty you should convict him of each [misprint for 'such one'] of the three grades of homicide as you find him guilty."

The instruction, taken all together, was correct. *Thompson* v. *State*, 5 Humph. (24 Tenn.), 138, 139; *Chappel* v. *State*, 7 Cold. (47 Tenn.), 92; *Jefferson* v. *State*, 3 Shan., 329, 333; *Wiley* v. *State*, 5 Baxt. (64 Tenn.), 662; *Legere* v. *State*, 111 Tenn., 368, 377, 77 S. W. 1059, 102 Am. St. Rep., 781. We do not approve the words "when clearly and fully established by the proof," as these words seem to indicate the necessity of proving the point beyond a reasonable doubt. *Lawless* v. *State*, 4 Lea (72 Tenn.), 173, 181, 182; *Owen* v. *State*, 89 Tenn., 698, 16 S. W., 114. But these words are sufficiently qualified, by what is said in the subsequent part of this instruction on the subject of reasonable doubt, to prevent the jury from being misled thereby. The learned trial judge evidently used these words under the suggestion made in *Jefferson* v. *State*, supra, wherein it was said, after referring to the caution with which the jury should scrutinize the evidence upon the subject of alibi: "Of course, this caution should be accompanied, as it was in this case, with the

128 Tenn. 5

qualification that, when such defense is clearly and fully made out, it is very conclusive." As laid down in *Legere* v. *State,* supra, it is sufficient if the evidence upon the subject of the alibi raises a reasonable doubt as to whether the accused was at the place of the homicide or at a different place. It is better not to treat the alibi as a defense at all, but simply as a point of evidence, on which the jury shall consider whether a reasonable doubt is raised in their minds as to the guilt of the accused. "Alibi is not regarded by the courts as a defense in a strict and accurate meaning of the term, but it is a mere fact shown in rebuttal of the State's evidence." 2 Am. & Eng. Ency. of Law & Pr., 1357, 1358.

It is next insisted that the court committed error in not granting a new trial because of the alleged newly discovered evidence of Dr. R. C. Dickinson. This matter cannot be considered, because the bill of exceptions does not show that it contains all of the evidence introduced upon the motion for new trial. Authorities supra.

Lastly, it is assigned as error that the verdict is not sustained by the evidence.

As to the fact of the shooting by plaintiff in error, there is much evidence on both sides; and after a careful examination of it all we are unable to say that the evidence in favor of the plaintiff in error preponderates against the verdict.

There is, however, one particular aspect of the evidence which has challenged our special attention. This

Odeneal v. State.

arises on the testimony of the two physicians who attended the plaintiff in error after he was shot.

These two physicians testified as follows:

Dr. W. H. Whitelaw:

"I was called with Dr. Royster to see a negro, Haywood Pender, on the 16th day of September of last year, and about twenty-four hours after he had been shot. I found that he had been shot in the lumbar region. I did not probe for the bullet. It ranged inward. It was a dangerous wound. We operated on him; took his bowels out; saw no trace of the bullet. The wound caused his death. I did not see him any more after that day; the day we operated on him. Found an infection in the abdomen as a result of the wound, but no trace of the bullet. I heard that he died not long after. I only saw him the one time. The wound certainly caused his death."

Dr. G. M. Royster:

"I was called to see Haywood Pender on September 16th of last year. He was shot on the 13th. Dr. W. H. Whitelaw went with me. The wound was two inches to the left of the median line; it ranged inward and toward the abdominal cavity. We operated on him, but found no trace of the bullet. He lived one month after he was shot; died on October 13th. I do not know and cannot say what caused his death. The wound was the remote cause of his death. Last time I saw him he was in a good condition and doing well. He might have died from a congestive chill. We operated on him; cut into the abdominal cavity. There

was some trace of pus, and the intestines were inflamed, caused by the wound. I cannot say that the bullet ever entered the abdominal cavity. I do not know whether the operation caused his death or not. It may have; but I do not think it did. The operation was a proper and necessary one. It is my opinion that the bullet wound contributed to or was the remote cause of his death.''

The contention of the plaintiff in error is that the surgical operation caused the death of the deceased. It is not insisted that the operation was unskillful, or was the sole cause; nor is there any basis for such contention to be found in the evidence which we have quoted, and which is all there is on the subject. Dr. Whitelaw says it was a dangerous wound, and that it certainly caused the death of Pender. Dr. Royster says he does not know what was the cause of the death—meaning the immediate cause; that it might have been the result of a congestive chill; that it also might have been caused by the operation, but does not think it was so caused; that the operation was a proper one, and necessary. He further says: ''The bullet contributed to or was the remote cause of his death.'' Dr. Whitelaw says that, while in the course of the operation they found no trace of the bullet, they did find an infection in the abdomen as the result of the wound. Dr. Royster says ''there was some trace of pus, and the intestines were inflamed, caused by the wound.''

The rule on this subject, supported by the weight of authority, is that, to exonerate the accused from the

Odeneal v. State.

charge of causing death by a dangerous wound unlaw-
fully inflicted, it must appear, not only that the opera-
tion was performed in a grossly negligent and unskill-
ful manner, but also that it was the sole cause of the
death, and not one of a series of intermediate causes,
following in the train of the injury, the original cause.
One who unlawfully inflicts a dangerous wound upon
another is held for the consequences flowing from such
injury, whether the sequence be direct or through the
operation of intermediate agencies dependent upon and
arising out of the original cause. One of these depend-
ent occurrences is the necessity of surgical aid, which
may eventuate as the immediate cause of death. Sur-
gical aid must be employed, with the attendant risks.
Surgeons are not infallible. They are required to have
and exercise only reasonable skill, measured by the
rules of their art or profession. When the accused
inflicts the injury that necessitates the operation, he is
held to assume the risk attendant on it. Much is re-
quired before the surgeons can be substituted for the
defendant. Wharton on Hom. (3 Ed.), secs. 34-39;
note to *Noble* v. *State,* 22 L. R. A. (N. S.), 841-848;
*Tibbs* v. *Com.,* 138 Ky., 558, 128 S. W. 871, 28 L. R. A.
(N. S.), 665, and note; *McCoy* v. *Com.,* 149 Ky., 447,
149 S. W., 903; *Perdue* v. *State,* 135 Ga., 277, 69 S. E.,
184; *Johnson* v. *State* (Fla.), 59 South. 894.

In view of the rule stated, it is clear that the death
could not be attributed to the act of the surgeons.

It results that there is no error in the judgment of
the court below, and it must be affirmed.