# Oliver v. Commonwealth.

Decided December 19, 1930.)

C. A. NOBLE for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

The appellant, Will Oliver, was indicted in Knott county and charged with maliciously murdering Brown Oliver, his son-in-law, and which was committed by appellant shooting deceased from the effects of which he died. At the trial thereof appellant was convicted of voluntary manslaughter and punished by confinement in the penitentiary for five years. The motion for a new trial complained of the verdict, and the judgment pronounced thereon, for a number of grounds, but none of which do we regard of sufficient materiality to merit discussion in this opinion, except two, and which are: (1) That the testimony was insufficient to sustain the conviction, and if it is held that the offered peremptory instruction was improper, then the verdict is flagrantly against the evidence; and (2) error in the self-defense instruction. They will be disposed of in the order named.

1. A substantial outline of the testimony is to this effect: Appellant's second wife, with whom he was living at the time, was the sister of the deceased, and the latter had married the daughter of appellant by a former marriage. The two families lived in the same house, which consisted of two front rooms and an ell room used as a kitchen, and it was situated in a remote and appar-

ently wild section of Knott county. On the fatal day some neighboring men came to the Oliver residence, and some of them brought along some moonshine whisky, of which all of the men-folks then gathered at the Oliver residence more or less imbibed; but deceased and one Hancey Bates retired to one of the front rooms away from the others and seemed to have gotten the advantage of those left in the other room in the amount of the liquor consumed by them. After it had all been consumed, or enough of it to satisfy the thirsts of Bates and the deceased, the latter entered the room occupied by the others, and as he did so he "allowed" that he "was the best damn s—— of a b—— on the creek," and immediately proceeded to kick from under those who were in there the boxes and kegs upon which they were sitting. Appellant, according to the testimony, protested and asked him what was the matter, when he grabbed a shotgun that was in the room and unbreeched it and discovered that it contained no cartridges; whereupon he threw it upon the bed and commenced to pursue appellant, who, according to some of the testimony, was running about over the house trying to get away from deceased. After a time appellant went into the yard and to the front fence around it where a gate was intended to be, but according to some of the witnesses there was no opening or shutter but only some set post for one.

In the meantime deceased had drawn his knife and had it opened in his right hand, and when he got to within six or eight yards of appellant the latter shot and killed him. The evidence appears to disclose that the shooting was done with the same gun that deceased had thrown upon the bed; but, exactly when the appellant procured it, or shells with which to load it, as well as the time he did load it, is not disclosed by any testimony given on the trial. The testimony as a whole is very incoherent, nebulous, and obscure, and it is evident that some of the witnesses did not disclose all they knew. They would skip from one fact to another one occurring later and in such a fashion as to leave untold what happened between the facts to which they so testified. Some of those present were not called as witnesses, by either side, and no excuse for such failure is manifested anywhere in the record. Under such meager condition of the testimony, we are unable to determine from it whether or not either of the contentions made in support of ground 1 is or is not well

674

taken, and for which reason they are left open without expression of an opinion either way.

2. In support of ground 2, it is argued that the court erred in framing the self-defense instruction (No. 2) by incorporating therein these words: "And that there was no other safe means or to defendant apparent safe means of averting or warding off the danger or such apparent danger except to so shoot, wound and kill him," etc. We had the identical question before us in the very recent case of Slone v. Com., decided December 2, 1930, and reported in 32 S. W. (2d) ——, and in which we reviewed many prior opinions of this court holding that the incorporating of such language in the self-defense instruction was a prejudicial error authorizing a reversal. Such injected element of the right of self-defense is condemned upon the theory, as emphasized in that and the other opinions, that it implies "that defendant must seek safety in flight, or other means than by defending himself from the impending danger," when no such requirement is exacted of a defendant in order to defend himself against the requisite impending danger giving rise to his right to self-defense. It is unnecessary to repeat the argument in support of that conclusion, which was so recently done in the Slone opinion, nor to incorporate herein prior opinions to the same effect, since all of it may be obtained by a reading of our opinion in that case.

For the reason stated, the judgment is reversed, with directions to grant the new trial and for proceedings consistent herewith.