# Murphy v. Commonwealth.

(Decided March 17, 1936).

VICTOR A. JORDAN and H. H. OWENS for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER for the Commonwealth.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Indicted for the murder of Tom Byrd, Everett Murphy has been found guilty and his punishment fixed at life imprisonment. By this appeal he is seeking a reversal of the judgment, the grounds assigned and argued for reversal in substance being: (1) That the instructions given were erroneous and prejudicial; (2) that members of the jury were permitted to separate after being placed in the custody of the sheriff and were not kept together as required by law, but were permitted to engage in conversation with persons not members of the jury and not in the presence or hearing of the officer who had them in charge; (3) improper and prejudicial statements of counsel in clos-

ing argument for the commonwealth; (4) that the verdict is flagrantly against the evidence.

On the morning of April 26, 1935, Tom Byrd, a taxi driver, accompanied by four or five others, went in his automobile from Harlan to Mount Vernon to attend a funeral. On the return trip they were accompanied by three or four friends and relatives of some of the parties, making in all nine occupying the automobile. They arrived at a restaurant conducted by appellant on the highway near Barbourville in the evening shortly after dark, and six of the men, including Tom Byrd, got out and went into the restaurant to get something to eat, leaving one man and two women in the automobile. According to the evidence of those who accompanied Byrd into the restaurant, they all together ate eight sandwiches, for which they gave Byrd or his wife a dollar bill and received 20 cents in change. After they left the restaurant and had resumed their journey toward Harlan, a number of shots were fired from the rear, one of which struck Tom Byrd in the back of the head, causing his death, a few hours thereafter. They all testified that there was no trouble or difficulty in the restaurant and that they did nothing to provoke the attack made upon them by appellant; that no shots were fired by any of them.

M. E. Brooks, a traveling salesman residing at Middlesboro, testified that he drove up to the restaurant just before the shooting occurred; that he saw two men leave the restaurant, saw one automobile setting there, and heard another pull off but did not see it; that Everett Murphy came out of the restaurant and said, "They ain't going to get my stuff and run off with it," or something to that effect, and then started firing toward the automobile that was pulling away. He testified that the first thing that attracted his attention to any trouble was when Murphy came out with his pistol; that Murphy fired four or five shots, but that he neither saw nor heard any other shooting. He stated that a woman followed appellant out of the restaurant, and while the shooting was going on said, "Lord have mercy Everett, don't do that." The evidence indicates that this was appellant's wife.

According to the evidence of appellant, the men bought a number of sandwiches and some drinks

amounting in all to something over a dollar, and as they were leaving he said, "Boys, aren't you going to pay me?" One of them replied, "If you want it, come to Harlan and get it." He then came around through the kitchen from behind the counter, picked up his pistol, and asked them again if they were going to pay, and when he did that they fired two shots back that way; that while they were in the restaurant, one of the boys had what looked to be a 45 automatic pistol; that two shots appeared to come from the right-hand side of the automobile; that when these two shots were fired, he began shooting back at them; that he did this in order to protect himself, not knowing whether they were going to shoot any more or not. He testified that the witness Brooks was not there at the time but had been there a short time before. He was corroborated in the main by two other witnesses who were at the restaurant.

A number of witnesses, who were in the immediate vicinity at the time, testified that they heard about six shots fired; that the first two were noticeably louder than the others. There was likewise a number of witnesses who testified that they heard five or six shots fired in rapid succession and that there was no difference in the reports. Some witnesses for defendant testified that after the shooting they saw where two bullets had struck the building, the marks indicating that the shots had been recently fired. Police officers of Barbourville and others who made an examination of the premises and building testified that the bullet marks were not there on the morning following the shooting.

The criticism of the instructions given is all directed at the self-defense instruction. While eminent counsel have cited a number of authorities in support of other contentions, we find none cited as supporting argument that this instruction is erroneous. It is therefore reasonable to conclude that none could be found. The instruction follows the usual and approved form and embodies the right of appellant to defend himself or his wife or others at the restaurant from death or the infliction of bodily harm at the hands of Tom Byrd or any of the other occupants of the automobile. We therefore conclude that this instruction, in connection

with the other instructions given, properly submitted the issues to the jury.

One of the grounds for new trial was that members of the jury were permitted to separate after they had been placed in custody of the sheriff, and in support of this ground appellant filed an affidavit of Tom McDonald to the effect that the morning after the trial started he saw Joe Smith talking to Scott Lovitt, one of the jurors, on the street in front of Mrs. Jarvis' house and not in the hearing of other members of the jury, and that he did not see the officer who was in charge of the jury. He also filed an affidavit of Elmer Disney to the same effect. There is also in the record an affidavit of Earl Shaffer to the effect that on the last day of the trial, he saw two jurors leaving the courtroom, unaccompanied by an officer, go downstairs into the hall, where one of them was talking to some man unknown to affiant and not in the presence or hearing of the officer.

The commonwealth filed the affidavit of Sam Black, the officer in charge of the jury, to the effect that on the occasion referred to in the affidavits of McDonald and Disney, the jury was leaving the home of Mrs. Jarvis, where they were being kept, and that Scott Lovitt was walking ahead of the others and had reached the sidewalk when Mr. Smith came along; that they spoke to each other, but there was no private conversation between them; and that the occurrence took place in the presence of the other members of the jury. Joe Smith made affidavit that as he passed Lovitt in front of Mrs. Jarvis' home, he spoke to him but had no secret conversation and that the Murphy case was not mentioned in any way; that a number of jurors were within five or six feet of them at the time. Tom McDonald made a supplemental affidavit in which he stated that at the time referred to in his former affidavit, the jury was leaving their room at Mrs. Jarvis' residence which was about twenty feet from the street; that Sam Lovitt had reached the sidewalk and a number of jurors were between the porch and sidewalk and some on the porch; that he paid no attention and did not know whether the guard could see or know what was going on so far as Lovitt was concerned; that there did not appear to be any secret

conversation between Lovitt and Smith; that several of the jurors could have heard anything that passed between them. In regard to the affidavit of Earl Shaffer, Black stated in his affidavit that during the trial, two of the jurors wanted to retire to the toilet, and under the direction of the court, he accompanied them, leaving the others remaining in the presence of the court in the jury box; that neither of the jurors had any talk or private conversation with any person, were walking by his side, and had no conversation at all in regard to the case. Concerning what occurred in front of the home of Mrs. Jarvis, referred to in the affidavits of McDonald and Disney, it is quite obvious that at the time there was a substantial compliance with the requirements of section 244 of the Criminal Code, and only that character of compliance is required. Wilson v. Commonwealth, 243 Ky. 333, 48 S. W. (2d) 3. There is absolutely no showing that anything improper passed between the jurors and Smith. On the other hand, it is shown that they merely greeted each other in passing and were within full view of the other jurors and in the immediate presence of a number of them.

In the case of Barnes v. Commonwealth, 179 Ky. 725, 201 S. W. 318, the sheriff, who had charge of a jury in a murder trial, permitted two of the jurors to get into an automobile and drive to the hotel, while he, accompanied by the others, walked there. The two jurors were out of sight and hearing of the sheriff and the rest of the jurors for a very short time. It was not shown that the two jurors conversed with any other person concerning the trial. It was held that this temporary separation of the jurors in the circumstances shown did not warrant a reversal. In the case of Caudill v. Commonwealth, 217 Ky. 403, 289 S. W. 371, the sheriff with eleven of the jurors went into the dining room at the boarding house where they were stopping for a meal and by oversight left one of the jurors in a room. Upon reaching the dining room, the sheriff discovered the absence of the one juror and immediately returned and accompanied him to the dining room. It was held that this was not such separation of the jurors as would warrant a reversal. To the same effect, see Blyew v. Commonwealth, 91 Ky. 200, 15 S. W. 356, 12

Ky. Law Rep. 742; Clemens v. Commonwealth, 224 Ky. 370, 6 S. W. (2d) 483; Crenshaw v. Commonwealth, 227 Ky. 223, 12 S. W. (2d) 336. These authorities are conclusive and in the circumstances clearly indicate that no prejudicial error occurred at the time and place referred to in the affidavits of McDonald and Disney.

Concerning the separation and improper conduct of jurors attempted to be shown by the affidavit of Shaffer, it is sufficient to say that if in fact any error was committed, of which we are not convinced, it was waived by appellant. The record shows that when this alleged separation of the jurors occurred, the trial was in progress and two of the jurors with the consent and at the direction of the court were accompanied to the toilet by the deputy having them in charge. Appellant and his counsel must have known of it at the time. If appellant and his counsel knew of the separation of the jurors or when they learned of it, it was their duty to at once bring the matter to the attention of the court and to make seasonable objection. They could not take a chance on a verdict and after conviction raise the question for the first time on motion for new trial.

In the case of Black v. Commonwealth, 154 Ky. 144, 156 S. W. 1043, 1045, cited in Caudill v. Commonwealth, supra, it is said:

"When a new trial is asked on the ground that a juror has been guilty of misconduct, the person seeking a new trial on this ground should do so at the earliest moment after he has received information of the misconduct complained of, and should file his affidavit stating when he obtained the information. If the party seeking a new trial on this ground fails to do this, he will be deemed to have waived his right to rely on the misconduct as a ground for a new trial after there has been a verdict against him."

See, also, Drake v. Drake, 107 Ky. 32, 52 S. W. 846, 21 Ky. Law Rep. 636; Barnes v. Commonwealth, supra; Pierce v. Commonwealth, 215 Ky. 162, 284 S. W. 1035; Wilkerson v. Commonwealth, 88 Ky. 29, 9 S. W. 836, 10 Ky. Law Rep. 656; Vinegar v. Commonwealth, 104 Ky. 106, 46 S. W. 510, 20 Ky. Law Rep. 412. The ac-

cused may waive his right to object that the jury was not kept together as provided in section 244, Criminal Code of Practice. Wade v. Commonwealth, 106 Ky. 321, 50 S. W. 271, 20 Ky. Law Rep. 1885; Heck v. Commonwealth, 163 Ky. 518, 174 S. W. 19; Keith v. Commonwealth, 195 Ky. 635, 243 S. W. 293; McKenzie v. Commonwealth, 193 Ky. 781, 237 S. W. 386.

Complaint is made of four statements of counsel for the commonwealth in his closing argument. The first relates to the number of witnesses called to testify for the respective parties. It is not pointed out, nor are we able to see, how appellant could have been prejudiced by this statement. In insisting on the extreme penalty, counsel for the commonwealth referred to conditions in the Frankfort penitentiary and indicated that a prison term would mean very little to the accused. Statements by attorneys for the commonwealth that life sentences mean little because of parole laws and the exercise of the pardoning power, or what is often termed by counsel as "coddling criminals," have been repeatedly and severely criticized by this court. In the case of Holmes v. Commonwealth, 241 Ky. 573, 44 S. W. (2d) 592, 598, employed counsel in closing argument for the commonwealth made a statement of such import, and in holding it was not reversible error this court said:

"This and similar statements have so often come under the condemnation of this court, it is to be wondered that the attorneys for the commonwealth do not refrain from making them. However, our attention has not been called to any case holding that such statements, standing alone, will constitute reversible error except the case of Berry v. Commonwealth, 227 Ky. 528, 13 S. W. (2d) 521, where it was so held under peculiar facts therein. The cases of Chappell v. Commonwealth, 200 Ky. 429, 255 S. W. 90, and Postell v. Commonwealth, 174 Ky. 272, 192 S. W. 39, in which similar arguments were criticized and condemned, were not reversed because of the improper argument. There are numerous cases which give recognition to the impropriety of such argument yet hold that it does not constitute such prejudicial error as will warrant a reversal. Bolin v. Com., 206 Ky. 608, 268

S. W. 306; Hall v. Com., 207 Ky. 718, 270 S. W. 5; Moore v. Com., 223 Ky. 128, 3 S. W. (2d) 190.''

Complaint is further made of statement of counsel for the commonwealth in which he rather dramatically referred to the numerous homicides that had been committed in Knox county, and also his statement that appellant's wife was put on the stand and never denied anything that took place, and in connection with which he made a disparaging reference to appellant and urged the jury to give him the extreme penalty of the law. It has been held by this court that attorneys for the commonwealth in argument before a jury may denounce crime in strong terms, Clark v. Commonwealth, 209 Ky. 51, 272 S. W. 11, and may refer to matters of history and facts within the common knowledge of the general public to illustrate a point or to warrant a con-clusion. Tyree v. Commonwealth, 212 Ky. 596, 279 S. W. 990; Berry v. Commonwealth, 227 Ky. 528, 13 S. W. (2d) 521. In the Clark Case, supra, it was held that dramatic reference to the assassination of President McKinley and a caustic arraignment of the murderers and assassins was not misconduct on the part of the commonwealth's attorney. See, also, Alder v. Commonwealth, 215 Ky. 613, 286 S. W. 696. In the case of Austin v. Commonwealth, 124 Ky. 55, 98 S. W. 295, 30 Ky. Law Rep. 295, the commonwealth's attorney, while warning the jury of their duty, stated in effect that the crack of the pistol, the roar of the shotgun, and the flash of the dirk had made this state notorious for crime; and this was held not to constitute reversible error. It has likewise been held that reference to other murders committed in the community was not prejudicial. McCoy v. Commonwealth, 149 Ky. 447, 149 S. W. 903; Hunn v. Commonwealth, 143 Ky. 143, 136 S. W. 144; Meredith v. Commonwealth, 148 Ky. 106, 146 S. W. 407; Shepherd v. Commonwealth, 230 Ky. 611, 20 S. W. (2d) 466; Shepherd v. Commonwealth, 236 Ky. 290, 33 S. W. (2d) 4.

At the close of argument the record shows that the court admonished the jury not to consider any of the statements complained of. In view of this admonition and the authorities cited, it is apparent that we would not be authorized to hold the statements complained of prejudicial to appellant's substantial rights.

While we have not detailed the evidence in full, the foregoing recital of the salient facts clearly demonstrates that the final ground urged for reversal is without merit. To hold otherwise would be an unwarranted invasion of the province of the jury. The evidence for the commonwealth beyond question fully sustained the verdict, and it was for the jury, and not for the court, to determine the credibility of the witnesses and the weight to be given their evidence. The fact that they accepted the evidence of the witnesses of the commonwealth, rather than that of appellant and his witnesses, is not a ground for reversal.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.