# Fields v. Commonwealth.

(Decided Oct. 25, 1938.)

B. M. JAMES and JOE P. TACKETT for appellant.

HUBERT MEREDITH, Attorney General, and WM. F. NEILL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Under an indictment charging her with the murder of her husband, Virgil Fields, Pearlie Fields has been convicted of manslaughter and sentenced to imprisonment for 12 years. She is appealing.

Grounds argued and relied on for reversal are (1) that the court erred in overruling appellant's motion for a peremptory instruction; (2) that the verdict is flagrantly against the weight of evidence; (3) error in permitting the introduction of incompetent evidence over appellant's objections; (4) that instruction No. 3 was prejudicially erroneous; (5) that the commonwealth's attorney in closing argument made improper and prejudicial statements to the jury.

The homicide occurred on the night of November 4, 1937. Shortly after the shooting neighbors and friends of deceased who learned that he had been shot went to his home. They found the door locked but he called to them to force the door open which they did. On entering the house they found him lying on his back at full length with the bed, near the wall against which the bed stood. The bed covers were pulled up under his arms. There was a wound in the neck from which blood was flowing profusely on the pillow and bed clothes. He was taken to a hospital at Wheelwright and in a short time removed to a hospital at Pikeville where he died a few hours later.

Doctors testified that the bullet entered the side of the neck near the base, completely severing the spinal cord; that this caused paralysis of the entire body from there down. It appears in evidence that for some time appellant and her husband had been having domestic troubles, often engaging in fights and brawls. Appellant testified that when she returned home from church she found the doors locked but her husband finally let her in; that he asked her where she had been and that she told him; that after putting her baby to bed he jumped on her, beat her and was chasing her with an ice pick when she procured a pistol from a dresser drawer and fired one shot at him when he was near the foot of the bed; that he fell back on the bed and asked her to put him in the bed which she did, pulled the covers up over him and then went for the doctor.

Physicians who treated deceased and others who accompanied him to the hospital testified to statements made by him concerning the shooting. These statements were in substance that he had gone to a trunk to look at some insurance papers and after looking them over went to bed. When his wife came in she went to another room and in a short time came back and asked him what he had been doing in the trunk. He told her he had been looking at his insurance papers and that she commenced arguing and quarreling with him and continued until he told her he was tired of the fuss and did not want to hear any more; that she then shot him. Neighbors who went in after the shooting testified that there was no evidence of a struggle in the room and no blood on the floor or elsewhere except near the pillow. Before making the statement to the doctor at

the first hospital to which he was taken deceased had indicated that he entertained no hope of recovery and had been advised by the doctor that his wound was fatal. When the neighbors told him they were going to take him to the hospital he told them that it would do no good because he was getting too short of breath. Some of these parties also testified as to statements made by him concerning the shooting.

Counsel for appellant base their argument that the court should have peremptorily instructed the jury to find appellant not guilty on the ground that there was no evidence to contradict that of appellant that she was acting in her necessary self-defense when she shot her husband. The statements made by deceased as to how the shooting occurred and evidence concerning physical facts and circumstances strongly tend to indicate that the shooting occurred as he said it did and that he was lying on the bed when he was shot. Appellant stated that deceased was coming toward her and facing her when the shot was fired. But as shown the bullet entered the side of the neck. According to the evidence the wound bled profusely and yet there was no blood except at and near where his head was lying. The severing of the spinal cord immediately caused a complete paralysis from the neck down and the evidence clearly indicates that neighbors found deceased in the same position as he was when he received the fatal wound. If the evidence as to the statements made by deceased was properly admitted as a dying declaration it is at once apparent that the court did not err in overruling appellant's motion for a peremptory instruction and it is equally apparent that the verdict was not flagrantly or at all against the weight of the evidence.

The chief basis for the third ground is in effect that the evidence of witnesses as to statements made by the deceased were improperly admitted because proper foundation had not been laid for its admission. The evidence clearly indicates that deceased never entertained any hope of recovery and when it was proposed shortly after the shooting that he be taken to the hospital he said it would be no use that he was getting too short of breath and every subsequent statement indicated that he believed he was going to die. In fact in his condition he could not have believed otherwise and there is not the slightest evidence to indicate that he ever entertained

any hope of recovery. We therefore unhesitatingly conclude that no error was committed in the admission of this evidence.

Question is made about some other evidence introduced but without going into detail it is sufficient to say that we find no error in the matters complained of. Even if error was committed in the particulars indicated in the brief the evidence complained of was of a trivial and inconsequential nature and its admission was not prejudicial since it could have had no weight in determining the verdict of the jury.

Instruction No. 3 on self-defense contained this language:

> "* * * and that it was necessary or was believed by the defendant in the exercise of a reasonable judgment to be necessary to shoot the deceased in order to avert that danger, real or to the defendant apparent, * * *."

It is argued that the word "avert" as used in the quoted excerpt renders the instruction prejudicially erroneous and the cases of Oliver v. Commonwealth, 236 Ky. 672, 33 S. W. (2d) 684, and Slone v. Commonwealth, 236 Ky. 299, 33 S. W. (2d) 8, which is referred to in the Oliver Case, are cited. The instructions in the cases cited were condemned because they contained or conveyed the idea that the accused could not defend himself against an attack if he could escape the danger by flight or otherwise. But it will be seen in this case that instruction No. 3 does not contain or convey any such idea. In Utterback v. Commonwealth, 59 S. W. 515, 60 S. W. 15, 22 Ky. Law Rep. 1011, it is held in effect that the word "avert" is not equivalent to or synonymous with the word "escape." When the instruction is read as a whole it is obvious that it does not contain the vice attributed to it by counsel.

It is urged that in argument before the jury the commonwealth's attorney referred to the prevalence of crime and particularly murder in Floyd county and also challenged the truth of evidence relating to the ice pick which appellant claimed her husband had at the time of the shooting. In Austin v. Commonwealth, 124 Ky. 55, 98 S. W. 295, 30 Ky. Law Rep. 295, the commonwealth's attorney in a speech to the jury concerning their duty in substance said that the crack of the pistol, the roar of

the shotgun and the flash of the dirk had made this state notorious for crime. It was held that such argument was not prejudicial.

In Murphy v. Commonwealth, 263 Ky. 347, 92 S. W. (2d) 342, it is said [page 345]:

> "It has been held by this court that attorneys for the commonwealth in argument before a jury may denounce crime in strong term., Clark v. Commonwealth, 209 Ky. 51, 272 S. W. 11, and may refer to matters of history and facts within the common knowledge of the general public to illustrate a point or to warrant a conclusion."

The commonwealth's attorney had a right to comment on the evidence and to draw reasonable inferences and deductions therefrom. Linde v. Commonwealth, 208 Ky. 98, 270 S. W. 451. It is our conclusion that he did not go beyond the bounds of legitimate argument as defined by this court in authorities cited.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.