PATTON v. MORARITY.—74 S. W. (2d) 513.

Western Section.    December 15, 1933.

Petition for Certiorari overruled by Supreme Court, May 4, 1934.

John W. Harris, Jr., and A. B. Knipmeyer, both of Memphis, for plaintiff in error.

Winchester & Bearman and W. W. Harvell, all of Memphis, for defendant in error.

SENTER, J.  The appeal in this case is from a judgment rendered by the circuit judge against Mr. and Mrs. J. B. Patton, the defendants below, and in favor of Clifford M. Morarity, the plaintiff below.  Only Mrs. Patton appealed to this court in the nature of a writ of error.  The suit was commenced before a justice of the peace in Shelby county, resulting in a judgment in favor of plaintiff.  On appeal to the circuit court of Shelby county, the case was tried before the circuit judge without the intervention of a jury, resulting in a judgment in favor of plaintiff below.  For convenience the parties will be referred to as in the court below, Clifford M. Morarity, plaintiff, and Mrs. J. B. Patton, the defendant.

The suit grew out of an automobile collision occurring at the intersection of York avenue and Rozelle street in the city of Memphis.  Rozelle street runs north and south, and is about 35 feet wide.  York avenue runs east and west and is about 50 feet wide.  East of Rozelle street, York avenue is divided by a parkway or grass plot in the center of the street.  York street is about 4 feet wider east of Rozelle street than it is west of Rozelle.  There is a decided conflict in the evidence with reference to the collision between the car driven by Mrs. Patton and the car driven by Morarity.  Morarity was driving north on Rozelle street, and Mrs. Patton was driving east on York avenue, when the respective cars entered the street intersection.  The principal controversy is with reference to which of the two cars first entered the street intersection, and as to whether Mrs. Patton, on crossing the street intersection, headed her automobile diagonally toward the north so as to drive on the north side of the neutral strip or grass plot in the center of York avenue.

Plaintiff, Morarity, was driving his automobile and a young lady was riding on the front seat with him; another young lady was riding on the rear seat with a Mr. Goldberg.  Mrs. Patton was driving her automobile and her seventeen-year-old daughter was riding on the front seat with her, and two other young ladies were on the rear seat of her automobile at the time of the collision between the cars.  We think it clear from the evidence that at the time of the collision Mrs. Patton was near the north curb of the grass plot or

neutral strip and that her car was headed slightly to the northeast when the collision occurred.

Morarity testified that as he approached and entered the street intersection that he glanced or looked to the right, which would be to the east, and did not see a car approaching from that direction, and then glanced toward the left and about that time he saw the Patton car and that the Patton car came to a full stop so immediately in front of him that he could not apply his brakes or otherwise prevent running into the Patton car. The Patton car was turned over by the force of the impact. The Morarity car was considerably damaged by the collision. Neither car was running at a rapid rate of speed at the time. Morarity testified that at a point about 100 to 150 feet south of York avenue there is a railroad crossing, crossing Rozelle, and that he brought his car almost to a stop when crossing the railroad crossing, and was running at a rate of speed of 15 or 20 miles an hour at the time he entered York intersection.

The young lady riding on the front seat with Morarity testified that as Morarity entered the street intersection she saw the Patton car on York avenue west of the street intersection. She could not fix the distance other than to state that it appeared to be about "a house and a half" west of the street intersection when she first saw the car, and that it proceeded on angling toward the north as it crossed or attempted to cross the intersection and came to a stop at the point of the collision. The plaintiff also introduced E. M. Corbett, a witness for plaintiff. This witness testified that he was riding a bicycle on York avenue and that he saw the collision between the two cars. He stated that the Patton car passed him about 75 feet west of Rozelle intersection; that the car was running at a rate of about 15 or 20 miles per hour and was on the right-hand side of York avenue, or to the south of the center of York avenue. He further testified that as the Patton car entered the street intersection it was turned slightly to the right so as to continue on York avenue on the right-hand or south side of the neutral strip, and that, when it reached a point near the center of Rozelle, the Morarity car entered the intersection from the south on Rozelle and that Mrs. Patton, to avoid a collision, turned her car slightly to the left, heading it to the northeast, and that the Morarity car collided with the Patton car at a point near the north curbing of the neutral strip. The evidence of this witness corroborated the theory of the defendant. The other two occupants of the Morarity car who were on the back seat did not testify.

Mrs. Patton testified that she had picked up her daughter and two schoolmates and was driving on the right-hand side of York avenue as she approached Rozelle street intersection; that as she approached the intersection she glanced to her right and to her left, but that she evidently did not look far enough down Rozelle to see

the Morarity car; that when she entered the street intersection she turned slightly to the right so as to continue driving on the right side of York avenue, the south side of the neutral strip which began on the east side of the intersection. Her home was on the north side of York avenue between Rozelle and McLain streets. She testified that there was a break in the grass plot or neutral strip at a point about in front of her home, and that she intended to continue down York avenue to this break in the neutral strip and to cross into her driveway. She testified that about the time she turned her car slightly to the right, because York was broader east of the intersection, she saw the Morarity car, and almost immediately in front of her before she saw it, and that she then turned her car to the left, heading it northeast in an effort to prevent being struck by the Morarity car, and that the Morarity car struck the rear portion of her car, turning it over near the point of the northeast curb of the neutral strip. She testified that she did not see the Morarity car until it was almost immediately in front of her, and could not tell the rate of speed at which it was being driven. On cross-examination she denied that she was accustomed to approach her home between Rozelle and McLain on the north side of York, by driving on the north side of the parkway or neutral strip, and that she had always approached her home on York from the west by driving down the right-hand side of York avenue to the break in the parkway and would turn at that point and cross into her driveway.

Her daughter, who was on the front seat with her, corroborated her statements in all material respects. One of the young ladies on the rear seat of the Patton car also testified in behalf of the defendants, and she stated, in substance, that just before Mrs. Patton entered the street intersection that she glanced to the right and that she saw the Morarity car at a point near the railroad crossing on Rozelle which was shown to be about 100 feet south of the street intersection, and that Mrs. Patton, who was driving on the right-hand side of York as she entered the street intersection, turned her car toward the right so as to drive on east on York and on the south or right-hand side of York, but that just before the collision occurred Mrs. Patton turned her car to the left.

These were the only witnesses to the actual happening of the collision. Two other witnesses testified in behalf of plaintiff that they heard the impact of the collision, and they testified with reference to the location of the respective automobiles and they both put the Patton car at a point near the north curbing of the neutral strip and near the center of the street intersection, but a little to the northeast of the street intersection. In rebuttal the plaintiff introduced a witness who did not see the collision but was at the scene a few moments later. This witness testified that he observed skid marks leading northeast up to the point where the Patton car was turned over.

Both Mrs. Patton and her daughter, as also did the other young lady in the car, testified that the Patton car had not come to a stop until it was struck by the Morarity car, and Mrs. Patton testified that she did not apply her brakes and did not skid her car. Morarity and the young lady riding with him on the front seat both testified that the Patton car had come to a full stop when the collision occured.

It also appears that when the case was called for trial in the circuit court the attorney for the defendant moved the court for a continuance of the case on the ground that a material witness, and a disinterested witness, who was present and saw the collision, was not present. The attorney stated to the court that he would make an affidavit that immediately upon the case being placed upon the calendar for trial he had a subpoena issued and placed in the hands of an officer to be served on this absent witness, and then learned for the first time that the absent witness was temporarily out of Memphis on a visit. In his oral application for the continuance, the attorney for the defendants stated to the court that he had a written statement signed by the absent witness, and that, if the winess was present, he believed that the witness would testify to the facts as set forth in the witness' statement. It was agreed that the attorney for plaintiff could file his affidavit with his motion for a continuance. The application for a continuance was overruled.

The assignments of error by appellant present the questions, first, that the evidence preponderated in favor of plaintiff and against the judgment of the court; that the court was in error in disallowing the application for a continuance on account of the absent witness.

It will be seen that plaintiff and the young lady riding on the front seat with him (in view of the city ordinance giving the right of way at street intersections to the vehicle approaching from the right, where both vehicles entered the intersection at the same time), coupled with the evidence of the witness who testified to the skid marks on the street, testified to facts that would be sufficient to warrant the judgment in favor of plaintiff for the damage to the automobile, resulting from the collision, it being the only damage sued for. On the other hand, under the evidence of Mrs. Patton and her daughter and the young lady riding on the rear seat of the Patton car, if their evidence is to be taken as presenting the true facts, there would be no negligence entitling plaintiff to a recovery. The location of the respective automobiles at the time of the collision is a physical fact in favor of the contention of plaintiff, as are also the skid marks testified to by the one witness. The witness Corbett, introduced by the plaintiff, corroborates the evidence of Mrs. Patton and her daughter in every material particular. It will thus be seen that it became a close question on the facts and the evidence

was near a balance, the physical facts considered in connection with the whole evidence.

In this situation, Code 1932, section 10622, with reference to the trial of cases on appeal from a judgment of the lower court where the case was tried without a jury, must be applied, since we cannot say that the evidence preponderates against the judgment.

This brings us to a consideration of the assignment of error directed to the action of the court in denying the application by defendant for a continuance.

The question of allowing or disallowing an application for a continuance is in the sound discretion of the trial judge. Unless there is an abuse of this discretion the action of the trial judge in overruling an application for a continuance will not be disturbed on appeal. In this case counsel for the defendants simply made an oral application for a continuance with the agreement that he would file his affidavit in support of the application. The affidavit was not filed, nor was there a written application for a continuance at the time the motion was made. After the attorney for plaintiff had made his statement to the court, it seems to have been treated as though a written application had been made, and the application was disallowed. The attorney did file his affidavit setting forth the grounds for a continuance. For appellee it is urged that the affidavit is defective in at least three respects. First, that it fails to state when the absent witness would be expected back in Memphis, or if the witness was then out of the jurisdiction of the court. We think the affidavit sufficiently sets forth that the witness was then outside of Memphis and that the officer had failed to get service of the subpoena. The affidavit stated that the witness would be absent for two or three weeks. This, we think, satisfies the rule with reference to the first objection. The second objection to the affidavit is that it does not show that the witness was out of the jurisdiction of the court at the time. We think it is sufficiently shown by the affidavit that the witness was out of Memphis temporarily, and that for this reason the officer could not procure service. Another objection to the affidavit is that it is insufficient and defective in that it does not set forth that the facts expected to be proved by the absent witness could not be proved by another or other witness or witnesses, etc.

We think this objection to the affidavit and application is more serious. If the evidence of this witness was intended merely to corroborate other evidence offered by the defendant, we doubt if it would have been sufficient to entitle the defendant to a continuance. Turner v. Lumbrick, Meigs (19 Tenn.), page 7, and numerous cases from other jurisdictions. However, the Turner Case is with reference to the absence of a character witness. The affidavit in question sets forth the fact that immediately upon the case being set for trial,

he had a subjoena to issue for this witness and placed the same in the hands of an officer for service. The officer found that the witness was out of the city and the subpoena was not served. There was not sufficient time to take his deposition; and it was shown that he would return in two or three weeks. Attached to the application was a written statement which the witness had made and delivered to the attorney for the defendant. If the facts set forth in the written statement were testified to by the witness, it shows that the witness was material. There were only two eyewitnesses to the collision, except those in the respective cars. The written statement attached to the affidavit corroborated the theory of the defendant, especially in all material respects. If this evidence had been in the record, and unimpeached, we think that the preponderance of the evidence would have been with the defendant. Considering that the evidence was so nearly balanced, it was especially important to the defendant that the absent witness be present to testify. We must assume that all the facts set forth in the affidavit were stated to the learned trial judge at the time he ruled on the application, since it was agreed that the affidavit could be reduced to writing and subsequently filed, and no objection has been made that the affidavit states any facts not orally stated to the court, and it is clear that in order to expedite the trial the oral statement was accepted by the court with the agreement that it would be reduced to writing in the form of an affidavit.

We cannot escape the conclusion that the defendant was entitled to have the evidence of this witness. The materiality of this evidence was clear from the written statement filed with the affidavit, and which appears to have been presented to the court and adversary counsel at the time the application was made. According to his evidence there could have been no liability on the part of the defendant, and, according to the evidence of this absent witness, the defendant was not guilty of any negligence resulting in the collision, provided the absent witness had been present and testified to the facts as set out in the written statement signed by him.

Other objections are made to the application and affidavit, but we think that in order to meet the ends of justice and a fair trial, the defendant was entitled to have the evidence of this absent witness. It is shown from the statements contained in the affidavit that the witness was absent without any fault or negligence upon the part of the defendant or her attorney. He certainly exercised proper diligence in seeking to have this witness present as soon as the case was placed on the calendar for hearing.

Another objection was made that it appears that the court heard evidence on the question of the application for a continuance, and that all the evidence heard by the trial judge on the application for a continuance was not preserved, and that there should have

been a bill of exceptions to preserve the evidence heard on the application for a continuance. Eatherly v. State, 118 Tenn. (10 Cates), 371, 101 S. W., 187; Odeneal v. State, 128 Tenn., 60, 157 S. W., 419; Rosenbaum v. Herron, 5 Tenn. Civ. App. (5 Higgins), 639. If there was anything in the record to warrant the inference or conclusion that the trial judge heard any evidence on the application for a continuance, other than the application itself with the written statement of the absent witness attached, and which was a part of the application, the rule insisted upon would no doubt control. However, we fail to find anything in the record that would warrant the conclusion, or even an inference, that any evidence was offered or heard by the trial judge on the matter of the application for a continuance, except the affidavit of the attorney and the written statement attached thereto, all of which was a part of the application and not evidence offered in support thereof.

We are constrained to hold that the learned trial judge was in error in denying the application of defendant for a continuance, and that the judgment of the lower court must be reversed and the cause remanded to the circuit court of Shelby county for a new trial.

Appellee will pay the cost of this appeal.