Howard, J.
The appellants were indicted as “Charles Reynolds, whose true name is unknown, William Anderson, whose true name is unknown, and Joseph Gaylor, whose true name is unknown.” As said in the brief of their counsel, they “were at the time of their arrest ‘tramps’ without visible occupation.” Counsel also intimate that the prosecuting witness was himself a tramp, and that the matters charged against appellants were simply the result of a drunken quarrel among the tramps, being the prosecuting witness, the appellants, and three others who escaped arrest. Counsel for the State advance quite a different theory and point to evidence in the record *445 which supports the allegations made in the indictment.
The indictment is in two counts. The first charges that on the 1st day oí April, 1896, at the county and State named, the appellants did unlawfully, feloniously, willfully, maliciously and with premeditated malice, in a rude, insolent and angry manner, touch, beat, strike, wound, injure, and with great violence throw from a rapidly moving railroad train, one Theodore Beilstin, the prosecuting witness, with intent to murder the said Beilstin. The second count makes the same general charge against appellants, except that it is alleged that the acts done were with the intent to commit robbery and grand larceny.
The only error assigned is that the court overruled the motion for a new trial. The evidence is first reviewed by counsel for appellants with the purpose of showing that it was not sufficient to support the verdict. The evidence of the prosecuting witness certainly does support the verdict, and while he is not, perhaps, shown to be himself a paragon of virtue, we see no reason to hold his evidence incompetent. The verdict is also supported by other competent evidence introduced by the State.
It would appear that the six tramps, together with the prosecuting witness, whether he was also a tramp or not, took passage on the “blind platform” of a baggage car, between that and an express car, on a Baltimore and Ohio passenger train, as the same started west from Garrett City. There is evidence to show that after the train had attained a speed of from forty to fifty miles an hour the tramps attacked the prosecuting witness, first robbing him and then pitching him headlong from the platform; that he alighted on his feet and went back to Garrett, where he caused a telegram to be sent to Bremen for the arrest of his as *446 sailants; and that, after a severe struggle, three of the tramps, being these appellants, were arrested at Bremen, and were afterwards duly tried and convicted. Anderson was sentenced to a fine and imprisonment for two years, and the remaining appellants to a fine and imprisonment for five years.
Counsel find much fault with certain statements made to the jury by the prosecuting attorney. These statements had reference chiefly to the character of appellants as shown in the evidence, — that they went under various names, beat their way over the country, drifted about without having lived long enough in any community to have formed a reputation, and others of a like character.
The evidence did show the men to be of the character and history indicated; and while it may not be a crime to be a tramp, and while it is a sad commentary upon our civilization that men should be tramps,- yet we are unable to see why the evidence which showed the men to be tramps might not be properly commented upon. The previous life, habits, and surroundings of a man charged with a crime, may always be shown for the purpose of enabling the jury the better to apply the evidence to the case in hand. Some indiscreet zeal may, perhaps, have been displayed by the officer of the State in characterizing the unfortunate men before him, but the freedom of counsel in presenting a case to the jury as shown in the evidence must not be unduly circumscribed. The court did admonish the jury not to consider certain of the more intemperate language of the prosecuting attorney; and,, the giving to the jury of almost all the instructions asked for by the appellants, as well as the giving of other instructions, secured, as we think, a fair con *447 sideration of all the evidence adduced on tbe trial. See Coleman v. State, 111 Ind. 563.
In tbe course of bis argument to tbe jury, tbe prosecutor used this language: “Gentlemen, the weaker tbe case a defendant has, in a criminal case, tbe harder they cry reasonable doubt.”
Of this, counsel say: “When tbe jury retired they bad before them for consideration as one of tbe elements upon which to make up their verdict tbe fact, as thus stated, that tbe rule of reasonable doubt was an indication, when invoked, of guilt.”
While tbe statement was objectionable, as tending to discredit a rule of law, — a rule by which tbe law throws as a shield over every 'person charged with crime until evidence is adduced sufficient to disclose bis guilt beyond all reasonable doubt; yet we do not think tbe use of tbe language enough to warrant a reversal of tbe judgment. As said in Proctor v. DeCamp, 83 Ind. 559, “Errors in logic, or in law, occurring in tbe address to tbe jury, cannot be made a cause for overturning tbe verdict. If tbe error is of logic — if illogical conclusions are drawn or illicit inferences made — tbe courts cannot correct them by directing counsel to reason logically. If, however, counsel state the law incorrectly in their addresses to tbe jury, tbe adverse party can secure a correction. Tbe correction is not to be obtained by objecting to tbe statements of the counsel during tbe argument, but by asking tbe court to give tbe law to tbe jury in its instructions.” See, also, Sage v. State, 127 Ind. 15.
In tbe case before us tbe proper course was taken to correct any erroneous impression that might be left upon tbe mind of tbe jury'by reason of tbe language used by tbe prosecuting attorney. Tbe instructions of the court placed fully and faixly before tbe jury tbe *448 rights of the appellants, under the rule of reasonable doubt, as to their guilt or innocence.
Complaint is made because the court refused to give the 13th instruction asked for by the appellants, and which reads: “If you have a reasonable doubt as to whether the crime charged in the indictment was committed, then it is your duty to acquit.”
An instruction more favorable to appellants, and covering the ground of the foregoing, was instruction No. 5, requested by appellants anil given by the court, as follows: “The fact that a crime has been committed does not raise any presumption against the defendants, and unless the defendants are shown to have committed such crime yoü should acquit them.” And, in addition, in the 2d, 6th, and 7th instructions asked by appellants and given by the court, the utmost protection-was. thrown around them as to the nature of a reasonable doubt, and the duty of the jury to acquit unless guilt is shown beyond all reasonable doubt. Further protection is given in the 3d of these instructions, which charges that no conviction can be had upon mere belief, supposition or suspicion, but that the belief of the jury must be founded upon legal evidence introduced upon the trial.
Fault is found with instruction 25, requested by the State and given by the court, in which it is charged that if the appellants were present at the time of the commission of the assault, or assault and battery, and remained near by for the purpose of watching and giving aid, if necessary, thereto, they would be guilty of aiding and abetting in the commission of the crime. That is a charge of conspiracy to commit the crime for which the appellants were indicted. The evidence showed that the crime was committed by the six men on the car platform and pointed to them all as participators.
*449 In Williams v. State, 47 Ind. 568, it was distinctly held that one who is present aiding and abetting in the commission of a felony is a principal in the crime committed.
There was evidence to show that after appellants and their companions on the platform had robbed the prosecuting witness, one of them said, “To hell with him, throw him off.” “Do away with the son of a b — h.” 'That he begged for mercy, for his wife and child’s sake, and the reply came, “To hell with him, throw him off, we got to get rid of that fellow;” and more evidence to the same effect.
In relation to this evidence, the court, in the 11th instruction requested by the State, charged the jury as follows: “Every man is presumed to intend the natural, necessary, and probable consequences of an act which he intentionally performs, and if you find that the defendants perpetrated an assault and battery upon said Theodore Beilstin, and did throw him, the said Theodore Beilstin, from a rapidly moving railroad train in such a manner that it was reasonably calculated to destroy human life, then you are at liberty to infer that the defendants intended to kill said Theodore Beilstin, from such facts.”
We can see no error in the instruction. That the witness was not killed does not make the instruction bad. Had he struck on his head instead of upon his feet there would probably have been actual murder; and, instead of imprisonment for two or five years, the appellants might have been imprisoned for life, or even sentenced to death.
It is not necessary to give further consideration to rulings on the instructions. The instructions refused were either incorrect or were unnecessary because of other instructions given. In those modified, the modifications were necessary in order to make them appli *450 cable to the evidence adduced. The instructions given were substantially correct statements of the law as applicable to the evidence, and were quite as favorable to the. appellants as they were entitled to ask.
In the evidence given as to the resistance made to the Bremen officers who attempted to arrest the appellants and their companions, mention is made- of a revolver used by one of them, and with which an effort was made by him to kill one of the officers, and counsel complain because this revolver was brought into court and identified. That those accused of the crime charged should have resisted arrest, that they attacked and endangered the lives of the officers, and that three of them thus escaped, were circumstances proper to be brought to the knowledge of the jury,, not for the purpose of showing that they were guilty of the additional crime of assaulting the officers or resisting arrest, but for the purpose of determining whether such conduct was or was not an indication of guilt of the crime charged; and the court particularly instructed the jury as to the force and effect of such evidence. The production of the revolver was a proper incident to the giving of this evidence.
We have found no available error in the record, and are satisfied that leniency, rather than severity, was. shown in the trial of the appellants.
Judgment affirmed.