## Tyree v. Commonwealth.

(Decided January 26, 1926.)

### Appeal from Lawrence Circuit Court.

1.  Criminal Law—Rebuttal Evidence Contradicting Statements of Accused Properly Admitted.—In prosecution for homicide, state was properly permitted to introduce witnesses in rebuttal to contradict statements of accused, made on cross-examination, where court admonished jury that such evidence could be considered only for purpose of contradicting accused as witness.

2.  Criminal Law—Statement of Counsel for State in Argument that Defendant, if his Attorney's Statement was True, was Perjured Liar, Held Not Prejudicial.—In prosecution for homicide, statement by counsel for state in argument that, "The defendant, if W.'s statement is true, is a perjured liar," held not prejudicial, W. being attorney for accused, and having drawn certain conclusions from evidence.

3.  Criminal Law—Statement by Counsel for State that Evidence of Rebuttal Witnessess was Ample Proof of Defendant's Guilt Held Not Ground for Reversal.—In prosecution for homicide, statement by counsel for state in argument, that evidence of rebuttal witnesses was ample proof of defendant's guilt, held not to constitute grounds for reversal; being legitimate deduction from evidence that accused had not told the truth.

4.  Criminal Law—Counsel in Criminal Case May Refer to Matters of History and to Facts Within Knowledge of General Public to Illustrate Point or Warrant Conclusion.—Counsel in argument may refer to matters of history and to facts within knowledge of general public to illustrate point or warrant conclusion, and such argument is not ground for reversal in criminal case.

5.  Criminal Law—Referring to Murder Fresh in Minds of Reading Public as Illustrating to Jury that Foulest Murders go Unwhipped of Justice Held Not Error.—In prosecution for homicide, calling attention of jury by counsel for state to another murder still fresh in minds of reading public, as illustrating fact that sometimes foulest murders go unwhipped of justice because of questionable defenses or adroit counsel, held not error.

WAUGH and HOWERTON and W. T. CAIN for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

On the night of Sunday, November 15th, 1924, about the hour of 9:30, after several men and boys, including

appellant, Tyree, had gathered at the home of Mrs. Ross on Cain creek, in Lawrence county, and were preparing to have a chicken dinner, appellant, Tyree, shot and killed Ray Burchett, a young man about twenty years of age, who by occupation was a tool dresser. Appellant was about thirty-eight years of age and a bricklayer at the time engaged in building a brick house in the town of Blaine, in Lawrence county. It appears that both appellant and decedent were more or less under the influence of intoxicating liquor at the time of the fatal difficulty. The family of Mrs. Ross consisted of a husband, two grown daughters and one or two small sons. The visitors were apparently there for the purpose of seeing the girls, and incidentally to get some liquor and to have a chicken dinner. Two collections were taken up, one to buy an ax with which to chop some wood to make a fire and the other to buy chickens for the dinner. Appellant contributed to both funds and it appears that the deceased, Ray Burchett, contributed to the fund to buy an ax but declined to contribute to the fund to buy chickens, announcing he was going home. Two or three of the men and boys were sent to a nearby store to get chickens while appellant and Burchett and some others remained at the house. Burchett announced his purpose to go home and got up to leave the house. He soon returned and stated that his horse was gone and accused those who went after the chickens of taking his horse. He appeared to be angry and with another young man at the place followed the boys who had gone for the chickens and threatened to whip the ones who had taken his horse. When he met the boys returning with the chickens he pulled one of them off his horse and chastised him. He appeared to be very angry, but he returned to the Ross home, remaining on the outside. While in the yard he cursed and talked loudly. Up to that time there had been no disagreement between appellant and Burchett; they were strangers, never having seen each other before that night. Appellant hearing the loud talking of Burchett on the outside went to him and suggested that he be quiet; whereupon Burchett with an oath struck appellant in the chest and struck at him again as appellant ran into the house. A few minutes later the companion of Burchett attempted to induce appellant to come out of the house but appellant declined to go. He was sitting on the side of the bed talking to some of the young folk; while thus seated the deceased and his companion came into the house in a

friendly mood and again invited appellant to go out and take a drink but he declined. Thereupon they continued to urge him, and the three went out at the door and the door closed. Shortly thereafter those in the house heard appellant say in substance, "If you strike me again I will shoot your head off," and immediately thereafter four or five shots were fired in rapid succession, Burchett being killed. The first one to the door was told by appellant to stay in the house until he got away, and all did so. Later some one of them went for a doctor and others to get help. Appellant contends that he fired in self-defense; that Burchett was in the act of drawing a pistol with which to shoot him at the time he fired the fatal shot; that Burchett's pistol hung in his pocket and appellant "beat him to it;" that deceased finally got his pistol out and fired one shot after he had been shot by appellant; that appellant picked up the pistol from the side of deceased and took it away with him, being afraid, as he said, that the deceased might have relatives there who would take up the difficulty and do him harm. Appellant spent that night on the road towards his home at Olive Hill. On the way he bought some whiskey and talked to several different persons. The trial resulted in a verdict of guilty, his punishment being fixed at five years' confinement in the state penitentiary. He appeals.

Two grounds are urged for reversal of the judgment: (1) the admission of substantive evidence in rebuttal; and (2) improper argument by attorney for the Commonwealth.

With respect to the introduction of evidence out of order appellant says that the Commonwealth was permitted to introduce in rebuttal evidence which should have been introduced in chief, if at all. While appellant was on the stand he was asked on cross-examination about whom he saw and to whom he talked on the way from the scene of the killing to his home at Olive Hill. Three persons, H. L. Maddox, Jack Freeze and Mrs. Gordon Kelley, who afterwards became witnesses in rebuttal, were especially named and inquired about by the attorney for the prosecution. Appellant was further asked if he did not see two of these persons at their home and in the presence of other persons say certain things concerning the killing, fixing the time and place, some of which appellant denied having said. Among the things asked appellant was whether Maddox, on the night after the killing while at the house of Maddox, and in the pres-

ence of Freeze, asked appellant, "Say, Gaines, did the other fellow have a pistol?" and further if appellant did not answer, "I never saw any; I do not believe he had one," to which question appellant gave a negative answer. When appellant closed his evidence the Commonwealth called Maddox, Freeze and Mrs. Kelley, and asked them, in substance, the same questions which had been propounded to appellant, and they testified that appellant had said to them, in substance, the things he had denied he had said concerning the killing. The court admonished the jury that this evidence could be received and considered by it only for the purpose of contradicting appellant as a witness, if in their judgment it did contradict him, and for no other purpose. As will be seen the Commonwealth carefully laid the ground for contradiction of appellant by asking him the questions and giving him an opportunity to tell the jury what he had said to the witnesses, and we can see no reason why the course pursued by the prosecution should be subjected to criticism or urged as a ground for the reversal of the judgment. There is no merit in this contention.

The attorney for the Commonwealth was aided in the prosecution by Hon. Fred M. Vinson, member of Congress from the ninth district, who made an argument in the case. In the course of his address to the jury he said:

"The defendant, if Waugh's statement is true, is a perjured liar."

Waugh was one of the attorneys for the appellant and had made an argument for the defense in the case, contending that the evidence conduced to prove certain facts contrary to those testified to by appellant. Seizing upon these statements made by counsel for appellant, Vinson, in heated argument said: "the defendant, if Waugh's statement is true, is a perjured liar." While this was not very elegant language, it, no doubt, expressed the thought the attorney had in mind, namely, that appellant had not stated the truth about the killing, or that his attorney had drawn an unwarranted conclusion from the evidence. We cannot see that the foregoing statement of counsel for the Commonwealth is prejudicial to the rights of appellant.

It is next said in the bill of exceptions that Mr. Vinson declared in his argument, "The evidence of Hugh

Maddox, Jack Freeze, Gordon Kelley and Mrs. Kelley, is ample proof of the guilt of the defendant, and the argument of Tyree's counsel that the Commonwealth could not have proved who killed Ray Burchett if the defendant had not told the story, is a fake and of no effect.'' Appellant complains of this statement as calculated to highly inflame the minds of the jury against him, and as being contrary to the admonition of the court concerning the evidence given in rebuttal by the witnesses named.

The jury had been admonished that the evidence of Maddox, Freeze and the Kelleys could be considered only for the purpose of contradicting or impeaching appellant as a witness and for no other purpose, and it is upon that hypothesis that appellant now contends that is was improper for counsel for the prosecution to assert in argument to the jury that the evidence of those witnesses established the guilt of appellant because that evidence could be considered only for the purpose of contradiction and not as substantive evidence.   True, the evidence of the witnesses named was received in rebuttal and could not be considered as establishing the *corpus delicti* but only to effect the credibility of the appellant as a witness, but this does not preclude the attorney for the prosecution from commenting upon that evidence and drawing the conclusion that appellant was guilty in as much as that evidence tended to prove that appellant had not told the truth about how the killing occurred, and stating his conclusions that the evidence of those witnesses warranted the deduction that appellant's evidence perhaps was not to be relied upon, he having avoided the truth and substituted a fabrication.   Such deductions from the evidence, drawn by counsel for the prosecution, were legitimate and do not constitute grounds for a reversal of the judgment.   Again it is charged in the bill of exceptions that the same counsel for the prosecution said in argument:

"Gentlemen of the jury: All a man has to do at this day and time is to hire the best lawyers to be had, and you will remember the miscarriage of justice that we read about a few months ago in Chicago in the case of Loeb and Leopold, two of the foulest murderers in recent history, and justice is defeated.''

It has always been allowable for counsel in argument to refer to matters of history and to facts within the

knowledge of the general public to illustrate a point or to sustain a conclusion, and such argument is not ground for reversal of the judgment in a criminal case. Turpin v. Commonwealth, 140 Ky. 294; Bates v. Commonwealth, 16 S. W. 528; Slaughter v. Commonwealth, 149 Ky. 5; Clarke v. Commonwealth, 209 Ky. 51.

It is said in 16 C. J., page 899 that matters of common and general public information and of known and settled history properly may be referred to and commented upon by way of argument and illustration. Commenting upon the frequency of crime as a reason of convicting the accused is not generally regarded as error. It has been held that the telling of a joke in illustration of argument is not prejudicial. Peel v. the State, 144 Ala. 125; Anderson v. Commonwealth, 74 S. W. 679; 25 Ky. Law Rep. 32. Counsel may dwell upon the abuse of the doctrine of reasonable doubt by jurors as a proper subject of discussion, so it was held in the case of Anderson v. the State, 147 Ind. 445. Many other illustrations of nonprejudicial argument may be found in the cases of Babey v. Commonwealth, 169 Ky. 735; Jackson v. Commonwealth, 100 Ky. 239; McCoy v. Commonwealth, 149 Ky. 447; Hunn v. Commonwealth, 143 Ky. 143; Austin v. Commonwealth, 98 S. W. (Ky.) 295; Ball v. Commonwealth, 27 Ky. Law Rep. 448. In the McCoy case, *supra,* as well as many of the other cases cited, it was said that a broad latitude is of necessity allowed the prosecuting attorney in his argument to the jury, and that is the general rule.

The reference to the miscarriage of justice in the case of Loeb and Leopold was but to call a matter of history fresh in the minds of the reading public to the attention of the jury to illustrate the fact that sometimes the foulest murders go unwhipped of justice because they have resorted to questionable defenses or have engaged adroit counsel who, by powers of argument or skill and tact in the trial of criminal cases, are able to influence a jury to return a verdict in their favor. It is not infrequent for lawyers in argument of cases to juries to call to their aid incidents arising in famous trials of the long ago and to base their argument upon facts and results thus well known to the jury. Certainly members of a jury are authorized in considering their verdict in a criminal case, to call to their aid all their past experience and teaching—the sum total of their knowledge. Why then

should counsel be prohibited from calling to the attention of the jury historical facts and general matters of information which are calculated to throw light upon the conduct of the parties litigant and to aid the jury in determining the issues involved? None of the statements attributed to counsel for the prosecution are out of the ordinary. Scarcely a criminal case is tried before a jury where argument is had that counsel do not make similar statements both for and against the accused. Good ethics may require the choice of different words from those employed in this case to express the same thought, but frankness, direct statement or bluntness has ever been regarded as anything more than want of diplomacy or skill to delicately and elegantly express thoughts, and so far as we are advised has never been held to be ground for reversal of a judgment where the words employed are not necessarily insulting or humiliating. We find no error in the record warranting a reversal of the judgment. It is, therefore, affirmed.