## FAIRCHILD

v.

## COMMONWEALTH OF KENTUCKY.

Court of Appeals of Kentucky.

April 20, 1954.

Bruce H. Phillips, Bertram & Bertram, C. C. Duncan, Monticello, Hile Pritchard, Albany, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., James A. Hicks, Commonwealth's Attorney, Albany, for appellee.

CAMMACK, Justice.

Bruce Fairchild struck and killed Clellan Perdue, a boy 12 years of age, with his automobile. On his trial he was found guilty of voluntary manslaughter and sentenced to three years in prison. On this appeal he insists that (1) there was not sufficient evidence to warrant the submission of the case to the jury on a charge of voluntary manslaughter; (2) the jury was not properly instructed on involuntary manslaughter; and (3) certain evidence as to the speed he was driving should not have been admitted. The question as to whether the case should have been submitted to the jury on a charge of voluntary manslaughter is a close one, but we have reached the conclusion that the court properly so submitted the case. We have decided, however, for reasons hereinafter stated, to reverse the judgment because of the manner in which the jury was instructed.

Fairchild lived with his mother and father near Monticello. During the month of August, 1952, he left his home around 7:30 p. m. in a Chevrolet automobile. He drove to Albany, a distance of some 27 miles, over the gravel highway running from Monticello to Albany. The highway is 32 feet from shoulder to shoulder, and the gravel portion is some 20 to 22 feet in width. Fairchild stayed in Albany about 15 minutes and then started back to Monticello. He struck the Perdue boy and another boy near the Davis Chapel Church. This church and Bart Denney's store (which is some 200 yards from the church in the direction of Albany) are approximately halfway between Monticello and Albany. The accident happened around 8:30 p. m. Fairchild said both of his headlights were burning when he last checked his car, but witnesses for the Commonwealth said only one headlight was burning when the accident occurred.

Fairchild did not stop after the accident, but drove on to his home without any lights. He was not drinking, so the prime factors to be considered in determining whether Fairchild was driving his car in such a wanton and reckless manner as to show disregard for human life are speed and the manner in which he was driving. He said he was driving around 50 miles an hour until he passed some people between the church and the store and then slowed down to 40 miles an hour. Witnesses for the Commonwealth estimated his speed at 50 to 70 miles an hour. One witness, who said she was some 200 to 300 yards from the church, testified that the car "swiped her dresstail" as it went by. Fairchild said he was driving on his side of the road and the boys ran across the road directly in front of his car, making it impossible for him to avoid hitting them, and that he struck them with his left front fender. The Perdue boy was dragged about 100 feet and the other boy went back over the top of the car. The left front light rim of Fairchild's car was found at the scene of the accident. Most of the Commonwealth's testimony placed the boys on the side of the road walking toward the car. There is a ditch some two or three feet deep along the road and it is highly improbable that the boys could have been on the side of the road at the time they were struck. The evidence as to where they were at that time was properly a question for the jury.

The question of speed is a vital one in this case. In fact, we think the conflicting evidence as to Fairchild's speed warrants the submission of the case to the jury under a voluntary manslaughter instruction on the question of whether he was driving his car in such a wanton and reckless manner as to manifest disregard for human life.

In Cornett v. Commonwealth, 282 Ky. 322, 138 S.W.2d 492, we said that testimony as to the speed the accused was driving should be confined to the immediate scene of the accident, and that testimony relating to his speed at a distance so great from the

scene that the accused could have changed his course or manner of driving before reaching that point was not admissible.

■ We think the testimony as to the speed Fairchild was driving in the vicinity of the church and the store is admissible. The distance between these two places is some 200 yards. Fairchild admitted seeing persons walking along the road in this vicinity. He was familiar with the Davis Chapel Church community and had passed that place less than an hour before the accident. He did say, however, that he did not notice that services were in progress at the church as he went toward Albany. The evidence as to the speed of Fairchild's car should be limited to the vicinity of the church and the store.

■ In Penix v. Commonwealth, 313 Ky. 587, 233 S.W.2d 89, we pointed out that we have been reluctant to affirm felony convictions in automobile negligence homicide cases where the element of intoxication is absent.

■ In Marye v. Commonwealth, Ky., 240 S.W.2d 852, (1951), we said that a conviction of a motorist for involuntary manslaughter could not be upheld in the absence of a showing of gross negligence. At the time the opinion in the Marye Case was written the penalty for conviction of the offense of involuntary manslaughter was a fine not exceeding $5000, or a jail sentence of not more than one year, or both. KRS 431.075. At its 1952 Session the General Assembly passed KRS 435.025, which provides:

> "Any person who, by negligent operation of a motor vehicle, causes the death of another, under circumstances not otherwise punishable as a homicide, shall be imprisoned in the county jail for not more than one year."

In the case of Kelly v. Commonwealth, Ky., 267 S.W.2d 536, which is also an automobile negligence homicide case, we held that there was sufficient evidence to warrant the submission of the case to the jury under a voluntary manslaughter instruction because of the conflicting evidence as to the speed the accused was driving. In that case the only instruction given on involuntary manslaughter was one based upon the theory of ordinary negligence, with a penalty of not more than 12 months in jail under the 1952 Act. We reversed the judgment in the Kelly case because the court had not instructed the jury on the whole law of the case. We said that there should be two instructions on involuntary manslaughter: one based upon the theory of gross negligence, with the penalty prescribed in KRS 431.075; and the other upon the theory of ordinary negligence, with the penalty prescribed in KRS 435.025. Since the opinion in the Kelly case sets forth fully our reasons for the conclusions reached, it would serve no useful purpose to recite them again in this opinion.

In the case before us the trial judge gave one instruction on involuntary manslaughter, but it was predicated upon the theory of gross negligence, with the penalty limited to not more than one year in jail (the penalty prescribed in the 1952 Act, KRS 435.025). It is contended in this case, as it was in the Kelly case, that, since the accused received a sentence of more than the minimum prescribed for voluntary manslaughter (two years), the correctness or incorrectness of the involuntary manslaughter instruction is of no concern to him. We believe, however, for the reasons given in the Kelly case, that the accused was entitled to have the jury instructed on the whole law of the case.

Judgment reversed, with directions to set it aside, and for proceedings consistent with this opinion.

DUNCAN, J., not sitting.