### MERRIFIELD  v.  COMMONWEALTH.

Court of Appeals of Kentucky.

May 7, 1954.

Rehearing Denied June 18, 1954.

George R. Ambro, William A. Shumate, Louisville, for appellant.

A. Scott Hamilton, Commonwealth Atty., Laurence Higgins, Carl Ousley, Jr., Asst. Commonwealth Attys., Louisville, J. D. Buckman, Atty. Gen., Zeb. A. Stewart, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

Chester Merrifield appeals from a judgment sentencing him to death upon conviction of murder.

Around midnight on November 7, 1952, Merrifield, with his wife, brother-in-law and a lady friend of the latter, were at the Stork Club, a roadhouse near Louisville. The brother-in-law became involved in an altercation, which developed into a full-fledged fight outside of the club. As the fight was going on, two county policemen, driving by in a patrol car, saw the disturbance and stopped to investigate. Officer Keown got out of the car on the right side, and Officer Marcum on the left. As Officer Keown approached the group of people he was shot and killed with a .38 caliber revolver. Officer Marcum, a man named Riggs, and a taxi driver named Thomas Sanders all testified that Merrifield fired the shot. Merrifield denied firing the shot, although he admitted having a .38 caliber revolver in his possession immediately before and immediately after the shooting.

There is no contention that the evidence was not sufficient to support the verdict. The alleged errors relate to the admission of incompetent evidence, improper conduct of the Commonwealth's attorney in the voir dire examination, in the opening statement and in the closing argument, and failure of the court to grant a new trial on the ground of newly discovered evidence.

Upon the void dire examination the Commonwealth's attorney stated several times, to different groups of prospective jurors, that the evidence would show that Officer Keown, making what he thought was a routine investigation, got out of the police car and after walking 10 or 15 feet was shot and killed by Merrifield. It is contended that the effect of these statements was to "condition" the jurors to be death-penalty minded, and that the statements were prejudicial. As we see it, the statements merely gave the prospective jurors a general indication of the nature of the offense with which the defendant was charged, and they did not unduly emphasize any details of the case. As the case was developed upon the trial, the only real question was whether Merrifield was the person who fired the fatal shot, and under these circumstances the statements in question could not have been prejudicial.

In his opening statement to the jury the Commonwealth's attorney, after mentioning the importance of finding a motive for the killing, stated that the evidence would show that Merrifield was on parole from a sentence for armed robbery and that it was a violation of his parole for him to carry a weapon or to frequent a place where whiskey was sold. He then said, "In my opinion, Merrifield knew that if he were caught out there with that pistol it was a good possibility that he would have to go back to prison."

Upon the trial, it was proved that Merrifield had been given a life sentence for armed robbery, and was on parole at the time of the affair at the Stork Club. Upon objection being made to this evidence, the court ruled it admissible, saying:

"No, that shows motive. I will overrule the objection on the ground that the evidence shows motive or reason. It's up to the jury as to whether or not it does. It is competent on that theory. It is up to the jury to determine whether or not this evidence does show motive or reason."

The appellant maintains that the evidence as to the former conviction for

armed robbery was incompetent, and that the court's language in ruling upon the evidence was incorrect; also that the reference to the former conviction in the opening statement, and the Commonwealth's attorney's expression of his opinion as to the motive, were improper.

We think the circumstances of this case were such as to bring it within the rule that evidence of another crime may be admitted to show motive for the commission of the crime under trial; this being an exception to the general rule that evidence of other crimes is not admissible. Manz v. Commonwealth, Ky., 257 S.W.2d 581; Roberson's New Kentucky Criminal Law and Procedure, Second Edition, pages 681, 685, 691, 692. The main question here was whether Merrifield was the person who fired the fatal shot. On the surface, there was no reason for him to do so, and therefore we think it was proper to establish a reason or motive growing out of his fear of reincarceration for violation of parole.

The court's language in ruling on the admissibility of the evidence, though perhaps not well chosen, was sufficient to inform the jury that the evidence concerning the armed robbery conviction and parole was to be considered by the jury as bearing on the question of motive. We find no prejudicial error in the language of the ruling.

Since the evidence in question was competent, the Commonwealth's attorney did not commit error in mentioning it in his opening statement. Criminal Code of Practice, § 220. Although it perhaps was improper for him to express his opinion concerning the motive, we think that the particular expression of opinion, following in context the statement of the facts upon which such an opinion logically could be based, was not prejudicial.

Upon cross-examination of the defendant, the Commonwealth's attorney, after reminding the defendant of his previous testimony that he had no reason to kill a policeman, showed a wrist watch to the defendant, asked him if he was wearing the watch at the time of his arrest, and asked him to read the inscription on the back. Upon objection being made and sustained, no further questions were asked concerning the watch. However, no admonishment was given. The appellant maintains that the asking of the questions was prejudicial, and that an admonishment was required. In his brief, the appellant asserts it was "common knowledge" that the watch in question was supposed to have been stolen in a robbery in Ohio, and that the story had received considerable newspaper publicity.

It is our opinion that the question of whether the reference to the watch was prejudicial must depend upon the character of the reference itself, and not upon alleged extraneous facts not officially known to the jury. At the most, the reference might have raised an inference that Merrifield was wearing some one else's watch. Under the circumstances, we cannot say that this was substantially prejudicial. As a matter of fact, proof that Merrifield was wearing a stolen watch might well have been admissible as tending to prove a motive for the killing. Manz v. Commonwealth, Ky., 257 S.W.2d 581.

During the course of his final argument to the jury, the Commonwealth's attorney donned the uniform cap and coat which Officer Keown was wearing at the time of the killing, and made the point that Merrifield could not possibly have failed to observe that Keown was a police officer. Apparently, the purpose was to discredit Merrifield's statement that he did not see any policemen in uniform at the time of the shooting. The officer's widow was sitting in the courtroom at the time, and when the uniform was donned she burst out weeping and was led from the courtroom. Counsel for the defense made an objection, claiming that the scene was "staged". The Commonwealth's attorney then commented to the jury:

"Gentlemen, such callousness I have never heard, for a man to stand up here for an hour and beg you for mercy, and then to say that a woman's grief

when her husband has been torn from her to say that she is staging that grief. Do you think you should retaliate with mercy or kindness?"

The appellant contends that the foregoing incident was prejudicial, particularly so because of the failure of the court to admonish the jury as to the impropriety of the widow's emotional outburst.

■ While we do not commend the histrionics of the Commonwealth's attorney, and we feel that an admonishment would have been desirable, we do not find in the incident anything of a materially harmful nature. It appears that the defendant's sister and niece sat with him during the trial, occasionally indulged in weeping, and were mentioned sympathetically by the defendant's counsel in the closing argument. Obviously, each side was playing upon sympathy to some extent, and we cannot say that the Commonwealth so overstepped the bounds as to have deprived the defendant of a fair trial. There seems to have been a legitimate purpose for the donning of the uniform, and there is nothing to indicate that this was done with the deliberate object of provoking an emotional scene by the widow.

During the course of the trial, some effort was made to discredit the testimony of the taxi driver, Thomas Sanders, who said he was present at the Stork Club and saw the killing. The defendant made some point of the fact that Sanders did not tell his story to the police the same night. In his closing argument, the Commonwealth's attorney mentioned this point, and stated that Sanders' failure to come forward was due to fear. He then reminded the jury of the witness Schultz in the Willie Sutton murder case in New York, who was killed after going to the police with his story.

■ The appellant maintains that the Commonwealth's attorney went outside the record and made an unwarranted inference in stating that Sanders was afraid to give his evidence. The appellant relies upon Biggs v. Commonwealth, 196 Ky. 655, 245 S.W. 292. However, in that case the Commonwealth's attorney, in his closing argument, endeavored to state that the defendants had performed specific acts of intimidation, wholly outside the record. In the instant case, the Commonwealth's attorney did not charge the defendant with intimidation, but only suggested the fear that any person might have to "put the finger" on a murderer. We think this was not improper, particularly when in response to the defendant's efforts to show that Sanders had another reason for not coming forward promptly with his story.

The reference to the Willie Sutton case, for purposes of illustration, was not improper. Tyree v. Commonwealth, 212 Ky. 596, 279 S.W. 990.

The final major contention of the appellant is that he was entitled to a new trial on the ground of newly discovered evidence. The new evidence was addressed to the question of whether the taxi driver, Thomas Sanders, actually was present at the time of the shooting. One of the new witnesses was another taxi driver, who would testify that he was present at the time and did not see Sanders there. Another witness would testify that he employed Sanders to go on an errand for him, in a part of town away from the Stork Club, on a night when there was some trouble at the Stork Club, "possibly" the same night that Keown was killed. There also was some evidence consisting of trip records of the taxi company, which at the most might cast some doubt on the question of where Sanders was on the night in question.

■ Since there were two witnesses, besides Sanders, who testified positively that Merrifield shot Officer Keown, and since the newly discovered evidence does no more than raise a doubt as to whether Sanders actually was present, it is our opinion that the new evidence does not have the "decisive" character that impeaching evidence ordinarily is required to have in order to constitute grounds for a new trial. See Colson v. Commonwealth, 200 Ky. 402, 255 S.W. 60; Stacy v. Commonwealth, 221 Ky. 258, 298 S.W. 696. In addition, the affidavits in support of the motion for a new

trial merely recite due diligence in endeavoring to discover the evidence, without stating the nature of the diligence exercised.

Other minor grounds of error are suggested, which do not warrant discussion.

We think the defendant received a fair trial.

The judgment is affirmed.