**Virgil ROSS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 4, 1955.

Howell W. Vincent, Joseph C. Healy, Covington, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

MONTGOMERY, Justice.

Appellant, Virgil Ross, was indicted for voluntary manslaughter by running his

coal truck into a Chevrolet automobile and killing Lawrence Hartig near the intersection of 11th and Monmouth Streets in the city of Newport on November 7, 1953. He was convicted of involuntary manslaughter and his punishment fixed at a fine of $1,000 and imprisonment in the county jail for six months.

On appeal, the appellant urges that the court erred: (1) in permitting irrelevant and incompetent testimony to be introduced over the objection of appellant; (2) in failing to impanel the jury in the proper manner as provided by law; (3) in denying appellant's motion for a directed verdict; and (4) in failing to instruct on involuntary manslaughter, based upon gross and ordinary negligence.

Appellant was driving his loaded coal truck north on Monmouth Street in the city of Newport. Monmouth Street is a four-lane drive, and as it nears 11th Street, it runs upgrade. About sixty feet south of the intersection, and near the center yellow lines, the appellant collided with an automobile proceeding south and being driven by Russell Tiemeyer. The Tiemeyer automobile was knocked to its right and was struck by an automobile proceeding south in the outside lane, owned by William Dullaghan. When the vehicles came to rest, the truck was in the inside southbound lane. Tiemeyer's automobile was up on the curb to the right of the southbound lanes. Dullaghan's automobile was in the outside southbound lane, fifty to sixty feet south of the point of impact. As a result of the collision, Lawrence Hartig was killed. Dick Hartig and Jerry Steffen, also in Tiemeyer's car, and Tiemeyer were not injured. Appellant suffered a fractured spine. No one in the Dullaghan car was injured.

The appellant's evidence is to the effect that he was proceeding north on Monmouth Street at about 20 to 30 miles per hour when he came to an upgrade in the street and had to shift the gears of his truck in order to climb the grade. As he neared the intersection of 11th Street and Monmouth Street, the stoplight was red and three cars were stopped in front of him. As he proceeded to stop, Tiemeyer's automobile came over into the northbound inside lane and collided with the left front fender and wheel of his truck. When his truck came to rest, it was blocking the southbound inside lane. Appellant further says that he had not been drinking; that shortly after the accident he got out of the truck and became unconscious as the result of his fractured spine; and that he didn't remember anything until the following Tuesday night. The accident occurred on Saturday night about 9:00 o'clock.

Albert Jurgens testified that he observed continuously appellant's driving of the loaded truck from a point approximately two miles distant to the place of the collision. He said he tried to pass the truck two or three times but each time the truck would weave over in front of his car so that he was unable to do so. Thereafter, he drove about forty or fifty feet in back of the truck, as it would weave from the inside lane to the outside lane. Jurgens stated that he was traveling about 45 miles per hour. The collision occurred when the traffic light at the intersection changed to red. Three vehicles stopped in front of the truck. Appellant did not stop behind these vehicles, but turned from the northbound inner lane to the southbound inner lane, striking the Tiemeyer car head-on, thereby killing Lawrence Hartig. Appellant objected to the introduction of Jurgens' testimony relative to the manner and description of appellant's driving for the last two miles just before the collision.

■ Ordinarily a witness will not be permitted to testify concerning the speed or manner in which a motor vehicle has been driven at points distant or remote from the place of collision. This is based on the sound reason that speed and manner of driving may vary greatly from one point to another along the highway. However, testimony of a witness as to speed or manner of driving which shows that the witness has continuously observed same has been properly admitted as to distances as far as two and one-half miles from the

place of accident in civil actions. Clay v. Sammons, Ky., 239 S.W.2d 927. In Gauze v. Horn, Ky., 253 S.W.2d 606, this rule is discussed. In Ewing-Von Allmen Dairy Co. v. Fowler's Ex'r, 312 Ky. 547, 228 S.W.2d 449, it was held to be reversible error to exclude such testimony when the witness saw the car pass five hundred yards from the place of collision and continued to observe it until the accident occurred. Such testimony was admitted properly where the witness continuously observed a vehicle 1,800 feet distant from the scene of the accident to a point near the place of collision. Home Laundry Co. v. Cook, 277 Ky. 8, 125 S.W.2d 763. There is no reasonable basis for a different rule on this point in criminal cases.

■ Albert Jurgens was an eyewitness not only to the actual collision but also had observed appellant's driving continuously for a distance of two miles just immediately preceding. His testimony on this point was properly admitted.

The cases of Largent v. Commonwealth, 265 Ky. 598, 97 S.W.2d 538; Cornett v. Commonwealth, 282 Ky. 322, 138 S.W.2d 492; and Fairchild v. Commonwealth, Ky., 267 S.W.2d 528, relied upon by appellant, may be distinguished from this case because they do not involve continuous observation but only observations made at some distant point from the place of the accident.

The objection by appellant to the testimony of LeRoy Fredericks, a Newport detective, presents a more serious question.

Fredericks went to the hospital the next morning after the accident and talked with the appellant. He testified that the appellant told him that he had been drinking some gin. Upon leaving the hospital, Fredericks went to the place where the truck was parked and found a half-pint of gin, partially filled, under the right hand side of the seat. Fredericks did not tell the appellant that he was under arrest but did tell him that there was a charge against him and that he would have to give bond before he could leave the hospital. Fredericks' search of the truck was made without a search warrant, and not in the presence of appellant, about twelve hours after the accident. There was some evidence indicating that the truck had been accessible to various other persons after the accident and prior to the search.

■ In Commonwealth v. Lewis, 309 Ky. 276, 217 S.W.2d 625, the rules relative to the admissibility of evidence obtained by search without a warrant are set forth. Fredericks' search violated these rules, in that he had no warrant, appellant was not under arrest, and the search was made twelve or fifteen hours after the accident and not in the immediate presence of the appellant. Therefore, it was error to admit the testimony of Fredericks with reference to his search and finding of the gin.

■ Appellant also insists that the trial court erred in failing to give an instruction under KRS 435.025. In the case before us, the trial judge gave an instruction on voluntary manslaughter and an instruction on involuntary manslaughter, based upon the theory of gross negligence, with the penalty prescribed in KRS 431.075. For the reasons more fully discussed in the recent cases of Kelly v. Commonwealth, Ky., 267 S.W.2d 536; and Fairchild v. Commonwealth, Ky., 267 S.W.2d 528, the trial court should have given a further instruction on involuntary manslaughter, based on KRS 435.025.

It is unnecessary at this time to pass on the other questions raised in appellant's brief.

Judgment reversed with directions to set it aside and for proceedings consistent with this opinion.