**Robert (Bob) TREVATHAN, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 4, 1964.

Harry H. Boaz, Mayfield, for appellant.

Robert F. Matthews, Atty. Gen., Frankfort, L. M. T. Reed, Mayfield, Frank D. Berry, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

The appellant, Robert (Bob) Trevathan was indicted for the wilful murder of his son, Gene. Upon his trial he was convicted of voluntary manslaughter and sentenced to imprisonment for five years. KRS 435.-020.

Appellant presents three basic contentions for reversal: (1) improper argument by the Commonwealth's Attorney; (2) admission of evidence which was obtained as the result of an illegal search, and (3) a directed verdict of acquittal should have been given.

Gene Trevathan, the victim of the instant homicide, was an unmarried man, about thirty-two years old. His admitted paramour, Mary Byassee, testified that she was present, on January 5, 1963, when Gene sustained the fatal stab wound, and that the only other person present was the appellant, father of Gene. Gene and appellant lived in two rooms of a dilapidated house in Clinton; the homicide occurred in the kitchen-bedroom of that house.

According to Mary Byassee, Gene had brought her to the residence to watch television. When they arrived the appellant was sitting in a chair "in the door" between the only two rooms used by appellant and Gene. As Gene passed the place where appellant was seated appellant tripped Gene. Whereupon Gene said, "Daddy, don't do that anymore". Then appellant put his arm around Gene's shoulders and said, "You don't know this old Indian". Mary said, "If you are going to argue, I'm going home". She then started to the door to go home when she heard Gene say, "Daddy, you cut me and cut me bad".

Mary Byassee then observed that "blood was streaming in every direction" from Gene—that Gene walked right by her and fell on the floor. She recounted that she stood there and "looked a few minutes" and then turned to ask appellant whether he was going to do anything to help Gene. But, according to Mary Byassee, appellant was no longer present.

The coroner arrived about 7:00 p. m., shortly after the homicide. He found that Gene Trevathan was dead as the result of a stab wound just above his collar-bone, on the right side of his neck. The wound was slightly more than three-quarters of an inch in width.

When the sheriff and some police officers arrived they found appellant wandering about in the yard outside the house. Appellant reported that "somebody" had cut Gene, although he said that he was sure that Mary Byassee could not have done it.

Appellant was forthwith arrested and confined to jail. At the time of his arrest, the arresting officers searched the appellant as well as the premises, but found no weapon. On the next day, however, the sheriff returned to the premises and conducted a further search. In an outside toilet on the property he discovered a pocket knife. This search was performed without any search warrant. There is no contention that the appellant consented to the search.

In a preliminary hearing on the day of trial, appellant's counsel moved the court to suppress and exclude from evidence "any and all evidence pertaining to or alluding to a knife allegedly found in an outhouse on the defendant's premises" because the knife was discovered as the result of an illegal search and seizure. The trial court sustained the motion "to the extent of prohibiting the introduction of the alleged knife in evidence as an exhibit", but overruled the motion "and will permit reference and testimony as to the finding of the alleged knife".

During the trial a witness, Billy Byassee, made the following reference to the conduct of appellant just after the stabbing, and before any officer had arrived: "—and I stayed two or three minutes after that and got up to leave because I knew he was dead or dying and when I started out the back door I seen Bob (appellant) coming out from that old outdoor toilet and I stopped him and asked him, 'Have you called help or the ambulance for that?' and he said 'Yes'—".

The sheriff later testified that he found a pocket knife in the outdoor toilet when he searched it the next day. The appellant denied that he owned any pocket knife. Consistently with the court's pretrial ruling, the knife was not presented in evidence, and the knife was not presented in evidence, and

the foregoing constitute all the references to it in the evidence.

Freedom from unreasonable search and seizure is fully guaranteed by Kentucky Constitution, Section 10. Moreover, the guarantee against unreasonable search and seizure which is vouchsafed by United States Constitution, 4th Amendment, is equally applicable to activities of state officers. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The search made on the next day after the crime, without any search warrant, was an unreasonable and illegal search. Ross v. Com., Ky., 275 S.W.2d 424; Senibaldi v. Com., Ky., 338 S.W.2d 915; Manning v. Com., Ky., 328 S.W.2d 421.

The admission in evidence of the finding of the knife was error. The mere exclusion of the knife as an exhibit did not serve to cleanse the impurity of this illegal search from the testimony that the knife was indeed found. That this evidence was material and damaging to appellant may not be doubted when it is recalled that Billy Byassee told of appellant's emerging from the outdoor toilet just after the offense.

For the prosecution it is contended that appellant waived any objection to the illegal search because his counsel asked the officer whether he had seen the knife and whether it was like the one he had once known appellant to own. We are not able to accept that contention—it overlooks the fact that already the court had permitted the testimony that a knife was found. Under the circumstances, appellant was justified in attempting to prove that the knife was not his. The plain answer is that the appellant should never have been put upon proof as to the knife at all, because its discovery was the result of an illegal search.

Since there will be another trial, we observe that we find no merit in the appellant's contention that the argument of the Commonwealth's attorney was prejudicial.

Reference to well known historic events (in this instance the assassination of President Kennedy) is not improper argument, absent some showing of specific prejudice. Clark v. Com., 209 Ky. 51, 272 S.W. 11; Tyree v. Com., 212 Ky. 596, 279 S.W. 990.

From what has been said, we find there is no merit in appellant's contention that a directed verdict for acquittal should have been given. Certainly, the evidence of Mary Byassee is evidence of substance pointing toward appellant's guilt of the offense. The fact that her credibility is attacked is a matter which rests with the jury. Parsley v. Com., Ky., 273 S.W.2d 372.

The judgment is reversed for proceedings consistent with the opinion.